# RENO v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

**Division One, March 17, 1904.**

1. **CONTRIBUTORY NEGLIGENCE: Crossing Street Railway.** A woman sixty years old, in the full possession of her faculties, acquainted with the locality and street car tracks, who undertakes to cross the track near a crossing at a point where the approaching car can be seen for two or more blocks, by attempting to cross in front of the car, either after seeing it or without looking to see it, is guilty of contributory negligence.

2. ——: ——: **Speed of Car: Presumption.** A pedestrian about to cross a street car track, could not indulge the presumption that the car would not be run at a rate of speed in excess of the maximum rate prescribed by ordinance and that she could, therefore, cross in safety, if she did not see the approaching car or did not look for it, for she had no information on which to base such a presumption.

3. ——: ——: ——: **Wantonness: No Evidence.** Where the pedestrian in crossing a street car track in front of an approaching car is guilty of contributory negligence, an instruction that the company is liable if it did not stop the car in the shortest time possible after the discovery of the presence of the pedestrian on the track or her dangerous position (as the ordinance required), should not be given, if there is no evidence going to show that the car was not so stopped, and no facts from which it can be inferred.

4. ——: ——:⁻ ——: ——: **Conduct of Pedestrian: Presumption Indulged.** In the absence of testimony showing something in the manner, conduct or appearance of a person of mature years, walking in an ordinary manner in the street towards a street car track, that would indicate to those in charge of a rapidly approaching car that she is unmindful of her surroundings, or, that regardless of them, she is intending to cross in front of the car, they have the right to presume that she will stop without the danger line; and if acting on that presumption they do not discover her peril until it is too late to stop the car, the company can not be held liable for her consequent injury, although the car is moving faster than the maximum rate permitted by ordinance.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

REVERSED.

*McKeighan & Watts* and *Robert A. Holland, Jr.,* for appellant.

(1) The court erred in refusing to give the instruction in the nature of a demurrer to the evidence asked by defendant at the close of all the evidence. This instruction should have been given: (a) Because the evidence shows conclusively that plaintiff, in stepping upon defendant's track, immediately in front of an approaching car, was guilty of contributory negligence. Payne v. Railroad, 136 Mo. 534; Yancey v. Railroad, 93 Mo. 435; Kelsey v. Railroad, 129 Mo. 369; Lenix v. Railroad, 76 Mo. 86; Culbertson v. Railroad, 140 Mo. 35; Kreis v. Railroad, 148 Mo. 321; Maxey v. Railroad, 113 Mo. 1. (b) There was no evidence that after plaintiff was thus guilty of contributory negligence, in stepping upon the track in front of the approaching car, the motorman was guilty of any such conduct as would make defendant liable, in spite of the contributory negligence of plaintiff. Boyd v. Railroad, 105 Mo. 371; Watson v. Railroad, 133 Mo. 246; Davies v. Railroad, 159 Mo. 1; Tanner v. Railroad, 161 Mo. 497; Sharp v.

Railroad, 161 Mo. 214.   (2)   The court erred in giving instruction 1 asked by plaintiff; said instruction stating, in effect, that even though the plaintiff was guilty of contributory negligence, she was entitled to recover if the motorman, after seeing her in a position of peril, could have stopped the car, by the exercise of ordinary care, in time to have prevented striking the plaintiff. (a)   Because there was no evidence that after the motorman saw the plaintiff in a position of danger he could have stopped the car.   There being no evidence that the motorman could have stopped the car, after seeing the plaintiff in a position of danger, it was error to instruct the jury in regard to matters with reference to which there was no testimony.   Stone v. Hunt, 114 Mo. 166; State v. Hope, 102 Mo. 110; Evans v. Interstate Co., 106 Mo. 50; State v. Brown, 145 Mo. 680; Wilkerson v. Eilers, 114 Mo. 245.   (b)   Said instruction was further erroneous because it erroneously states that, in spite of the plaintiff's contributory negligence, plaintiff could recover if defendant's motorman could have avoided the injury by the exercise of ordinary care.   The concurrent negligence of the plaintiff precludes recovery. Boyd v. Railroad, 105 Mo. 371; Watson v. Railroad, 133 Mo. 246; Davies v. Railroad, 159 Mo. 1; Tanner v. Railroad, 161 Mo. 497; Sharp v. Railroad, 161 Mo. 214.

*Wm. M. Kinsey* and *A. R. Taylor* for respondent.

(1)   Under the evidence it was a question of fact for the jury to determine whether the plaintiff was guilty of any negligence whatever.   She looked both east and west for cars, both before leaving the sidewalk, and whilst passing diagonally on her course to the point of crossing.   When struck she was at or near the crossing for pedestrians.   She had her attention attracted to the car approaching from the east.   It is a physical fact that a person can not look both ways at the same time.   The appearance of the east-bound car, accord-

ing to the plaintiff's evidence, was at tremendous speed, such as she had no reason to anticipate. She knew that the car had no legal right to be run faster than ten miles an hour, to do so the statute was violated. After she looked west and saw no car, endangering her, she had the right to proceed on her way relying upon an obedience by the defendant of the ordinance. She was guilty of no negligence in doing this—this court has declared this precise proposition of law in Hutchinson v. Railroad, 161 Mo. 254; Eswin v. Railroad, 96 Mo. 290; Kelley v. Railroad, 101 Mo. 77; Jennings v. Railroad, 112 Mo. 276; Gratiot v. Railroad, 116 Mo. 464; Sullivan v. Railroad, 117 Mo. 222. (2) The second contention in appellant's argument is that there was no evidence that the motorman could know or did know of the plaintiff's peril. The motorman testified for the defendant that he saw the plaintiff step down from the sidewalk. The car was 150 feet away then. The woman was going in a northeasterly direction when she stepped into the gutter; he put on his brakes and reduced the speed of his car to two miles an hour. Didn't he see her about to go into peril then? Else, why stop the car? His story is that when he slowed down to two miles an hour the woman stopped. But the plaintiff testified that she didn't stop. Now can evidence be stronger that the motorman saw her peril? Of course, if it was undisputed that the plaintiff stopped and thus induced him to think she would not attempt to cross ahead of the car, the excuse for running her down might have some support. But the jury had all the evidence before them. They drew the inference from the testimony of both sides on this question that the woman did not stop but went forward continuously as she testified, until struck, and in view of the evidence of the motorman that he had his car under control and could have stopped instantly, but did not do so, that he was negligent in running over the plaintiff—a fair inference from the evidence given on both sides. So, appellant is clearly in

error in arguing that there was no evidence that the motorman saw the plaintiff about to go into peril, and in peril, in time to avoid the injury. The evidence of the motorman himself clearly shows that he saw her peril, for he says he virtually stopped the car because of such peril. Coasting Co. v. Tolson, 139 U. S. 558; Martin v. Railroad, 194 Ill. 148; Railroad v. Bodenur, 139 Ill. 605; Railroad v. Ives, 144 U. S. 429; Railroad v. Hellenthal, 31 U. S. C. C. A. 417; Gilbert v. Railroad, 38 U. S. C. C. A. 408; Beach on Cont. Neg. (3 Ed.), sec. 55; Harlan v. Railroad, 65 Mo. 22; Kelley v. Railroad, 75 Mo. 140; Scoville v. Railroad, 81 Mo. 440; Welsh v. Railroad, 81 Mo. 466; Bergman v. Railroad, 88 Mo. 678; Rice v. Railroad, 88 Mo. 392; Frick v. Railroad, 75 Mo. 595; Merry v. Railroad, 88 Mo. 677; Williams v. Railroad, 96 Mo. 281; Fiedler v. Railroad, 107 Mo. 652; Guenther v. Railroad, 108 Mo. 21; Reardon v. Railroad, 114 Mo. 406.

ROBINSON, J.—This is an action to recover damages for personal injuries, alleged in the petition to have been received by the plaintiff in consequence of the negligence of the defendant in running its street cars at a high and reckless rate of speed, and in excess of that allowed by the ordinances of the city of St. Louis, and without ringing the bell, sounding the gong, or giving any warning of the cars' approach that ran over and injured plaintiff. The petition further charges that the defendant violated the city ordinances requiring those in control of the movement of the cars to keep a vigilant lookout for persons approaching the track upon which they were being operated, and to stop the cars in the shortest time and space possible upon discovering a person in a dangerous situation.

The answer was a general denial and a plea of contributory negligence. The trial resulted in a verdict for the plaintiff for $4,000, from which defendant has appealed, and the case was sent to this court because the

constitutionality of the three-fourths jury law was challenged by appellant, and had not, when this case was heard, been passed upon by this court.

This accident occurred about half past nine o'clock on the evening of November 12, 1899, as plaintiff attempted to walk in a diagonal direction across Wash street between Fourteenth and Fifteenth streets, in the city of St. Louis, at a point a short distance west of the west crossing of Atchison Place and Wash street.

As this appeal will be determined upon the question of the propriety of the court's action in submitting plaintiff's case to the consideration of the jury, we will give in full the testimony of the plaintiff, as same is presented in appellant's abstract of the testimony, and as supplemented in respondent's additional abstract of the testimony filed in this cause.

Appellant's abstract of plaintiff's testimony is as follows:

"Witness thinks she is fifty-five years old, but does not remember her age. On the 12th of November, 1899, she lived at the southeast corner of Fifteenth and Wash, had lived there fifteen or sixteen years; on the evening of said date she left her house and went to the Carr Park church on Carr street; she had returned home from church about nine o'clock; afterwards she left the house again to go to the saloon on the northeast corner of Atchison place and Wash street for a glass of beer and some lunch; she had a little bucket in her hand; witness went out of her gate and walked eastwardly on the sidewalk on the south side of Wash street a little distance, then she started to cross the street in a northeastwardly direction; the saloon was on the northeast corner of Wash street and Atchison place; witness started from the south sidewalk towards the saloon in a diagonal direction; witness before she left the sidewalk looked west and looked the other way; witness did not see any car coming from the west and did not hear a bell ring; witness did not know any car was coming

from the west before she was struck; when she was struck, witness became unconscious; when witness came to her consciousness, she found her right thigh was broken and her left foot was badly injured; the foot was amputated above the ankle at the hospital; this operation was done by Dr. Nietert; witness remained in the hospital about three weeks and was then taken to her daughter's house in Carondelet, where she has stayed ever since; one rib was also broken and witness's head was cut and her hand was injured; before the accident witness was a pretty stout woman and did all her own work, washed and ironed and kept her house in order.''

Plaintiff's testimony as found in respondent's additional abstract of the record, is as follows:

"Q.  (By Mr. Taylor):  Now I will ask you before you left the sidewalk whether you looked to see whether a car was coming from the west, whether you looked west to look for a car?  A.  I looked west and looked the other way both.

"Q.  You looked both ways?  A.  Yes, sir.

"Q.  Now while you were walking down there to the place where you started to go across the track did you look again?  A.  Yes, sir.

"Q.  Did you see any car coming from the west when you looked?  A.  No, sir; I never saw any car nor heard a bell or nothing.

"Q.  Didn't you know the car was coming until it struck you?  A.  No, sir; I never saw it.

"Q.  (By Judge Barclay):  Now please tell these gentlemen here just exactly what you did from the time you stepped from your gate until you were injured?  A. I couldn't tell much, I walked out of the gate and went to cross over toward the track and before I got there I got caught by the car.

"Q.  Now as you were going across the street, as I understand your statement, you noticed this car coming from the east around the corner.  A. Yes, sir.

"Q.   The curve is a block from there at Fourteenth and Wash, isn't it?   A.   Yes, sir.

"Q.   Now you noticed the car coming?   A. Yes, sir.

"Q.   What did you say about this car which was coming that you noticed?   A.   I heard the bell, it was coming from down town.

"Q.   As it came around the corner it rang the bell?   A.   Yes, sir.

"Q.   You heard that?   A.   Yes, sir.

"Q.   And didn't look in the direction toward the west before you were hit, did you?   A.   Well I do not know how I would, but I didn't see the car, nor I didn't hear it; I always look both ways, always did.

"Q.   How far do you think you had started across the street before you noticed this car coming from the east?   A.   I think I was on the track where the car comes up.

"Q.   From the east?   A.   Yes.

"Q.   You had crossed the first track then?   A.   I do not think I was north of the track, but I was going to start over.

"Q.   Which track do you mean now, the track where the car from the east was coming?   A.   The car going down.

"Q.   You mean down town?   A.   Yes, sir.

"Q.   You didn't see the car that was going down? A.   No, sir.

"Q.   When you left the pavement did you then notice the car coming around the corner?   A.   I noticed the car after I was on the track and I thought I had ample time to cross and the other happened.

"Q.   But you did not see the car that come by? A.   No, sir; I never saw it.

"Q.   Then you got hit by this car that came from the west just as you stepped on the track?   A.   I think so.

"Q.   (By Mr. Taylor):   How did you walk when

you left the sidewalk up to the time you were hit? A. Oh, I had my usual walk, I don't know as it was just a fast walk or a slow walk.''

Mrs. Nelson, a witness called by plaintiff, testified that she saw the car that ran over and injured the plaintiff on the occasion in question, and that no signal of its approach was given except just as the car approached the Fifteenth street crossing, when the bell or gong was sounded, but that after the crossing was reached and passed, and until plaintiff was struck, no warning or danger signal of any kind whatever was given by the parties in charge of the car. She also says that she saw plaintiff while she was walking eastwardly on the south sidewalk on Wash street, and as she left the sidewalk and started across Wash street in a diagonal direction, to the northeast, and that plaintiff did not slow up or slacken her pace at any time after she stepped from the sidewalk to the street until she was struck by defendant's eastbound car, just as she was in the act of stepping upon the track, and that her gait was quite brisk for one of her age. To use witnesses's exact language upon this point, ''It was fast for a person of her age. She was not walking fast because she was a person of age, but rapidly, what I would call for her age.''

According to this witness, the plaintiff left the sidewalk and started across the street 150 or 160 feet east of the southeast corner of Wash and Fifteenth streets. This witness also testified that she, like the plaintiff, was wanting to cross to the north side of Wash street to reach her point of destination, and although still east fifty feet or more down Wash street from where plaintiff left the sidewalk, she says that she maintained her position on the sidewalk in order that defendant's eastbound car, which she had both seen and heard, might pass before she would attempt to cross the street. This witness also says that the car was being run at the rate of fifteen miles per hour when it struck

the plaintiff; that she did not notice that its speed was slackened in the least until just as it struck the plaintiff.

Charles Austram testified that he saw the accident in question from a point on Wash street, about 25 or 30 feet west of Fourteenth street, as he was also coming across the street. Saw plaintiff before she left the sidewalk, and after she left it and started to walk across Wash street "in a kind of northeast direction." He also says that he did not see plaintiff stop or slacken her gait from the time she left the sidewalk until she was hit by defendant's car. This witness says that he heard no bell or gong sounded from the car that ran over plaintiff, and that he thought the car was running at the rate of about fifteen miles an hour at the time.

Edward Ryan, another witness called by plaintiff, testified that he stood about 65 feet east down Wash street from where plaintiff was injured on the evening in question, and that he heard no gong sounded or warning given from the car that ran over plaintiff; that when he first saw the plaintiff, she had just stepped with one foot upon the track upon which defendant's car was running, and that the car was then within ten or twelve feet of her, and that "she seemed to draw back just as the car struck her," and that he then turned his head and saw nothing more. This witness also testified that if a person was standing at the point where plaintiff was hit by the car and would look west up Wash street, the car could be seen with a headlight, as this car had, as far west as Eighteenth street, and that the blocks in that vicinity are about 300 feet long.

It was also shown that the distance from the curb stone of the sidewalk on Wash street where plaintiff left it to cross the street, to the south rail of defendant's east-bound track, upon which plaintiff was injured, was ten feet and six inches in a direct line. Plaintiff then read in evidence an ordinance of the city of St. Louis which provides that the defendant shall not run its cars

east of Grand Avenue at a rate of speed greater than ten miles an hour. Also an ordinance of the city in which is provided: "The conductor, motorman, gripman, driver or any other person in charge of such car shall keep a vigilant watch for all vehicles and persons on foot and especially children, and on the first appearance of danger to such person or vehicle, the car shall be stopped in the shortest time and space possible."

The above are, in brief, the substantial facts of plaintiff's testimony upon which she must rely to maintain her assertion of right to the judgment obtained.

At the close of plaintiff's testimony defendant asked the court to instruct the jury that under the pleadings and evidence offered, the verdict should be for the defendant, which instruction the court refused, and after exceptions noted, the defendant then offered its testimony, which tended to prove that the car that ran over and injured plaintiff was being run at its usual and accustomed rate of speed at the time of about eight miles per hour, and that the usual and ordinary signals were given as they came to and crossed over Fifteenth street, and that the gong was rung just as the car passed Fifteenth street and as plaintiff first stepped into the street from the sidewalk about 150 feet east of Fifteenth street.

Defendant's principal witnesses were the motorman and the conductor in charge of the car. The motorman, Alonzo St. Clair, testifies that just about the time his car had passed Fifteenth street going east, he saw the plaintiff step from the sidewalk upon which she was walking, in an easterly direction on the south side of Wash street, about 100 or 150 feet east of his car, into the street; that he at once gave his gong a stroke and plaintiff slowed up and stopped, as he thought, to let his car pass before she would further attempt to cross the street. To use the witness's exact words: "She slowed up and stopped and as she did so, I supposed she was going to wait until the car passed, and I let my

brake fly loose. I started to wind it up, but when I saw her beginning to stop I let it loose and went on, and when I got very close to her she walked right out in front of the car, and then it was too late to do anything.'' This witness also said that he immediately slowed down the speed of his car when he first saw plaintiff step into the street, as was his custom, and that he only loosened his brake and gave the car its usual motion when he saw that plaintiff had taken heed of his approach. The witness also says that he saw the plaintiff while she was walking on the sidewalk, as well as when she left it and started across the street, and that her gait was that ordinarily taken by ladies of her age in walking about the city, and that he observed nothing in the manner or the appearance of plaintiff to indicate that she would not take the proper care of herself to avoid a collision with his car, until the instant she stepped upon the track. This witness says that the car was not more than eight or ten feet from plaintiff when she started forward and stepped upon the track and that he at once applied the full power of his brake, but that he did not reverse the power of his machine, as he did not have time, and that if he had reversed his power, the car would not have been brought to a stop in a shorter space than was done; that the car was brought to a complete stop within 25 to 30 feet after plaintiff was struck and that when the car was stopped, he jumped out and found the plaintiff under the rear of the car near its rear trucks, badly cut and bruised.

To about the same effect was the testimony of the conductor who was on the car with the motorman at the time, and as no purpose can be gained by its repetition, it may be omitted with this suggestion.

At the close of all the testimony, defendant again renewed its request that the court instruct the jury that under the pleadings and evidence, the verdict should be for defendant. This instruction the court refused and at plaintiff's request, the following instruction was

given, which indicates clearly upon what theory the case was presented to and considered by the jury:

"1.    If the jury find from the evidence in this case that on the 12th day of November, 1899, the defendant was operating the street car mentioned in the evidence for the purpose of transporting persons for hire, from one point to another within the city of St. Louis, and if the jury find from the evidence that Wash street and Atchison Place at said time were open public streets within the city of St. Louis, and if the jury further find from the evidence that on said day the plaintiff was passing across Wash street from the south to the north side of Wash street at or near its intersection with Atchison Place, and that whilst doing so she was struck by defendant's east-bound car and injured, and if the jury find from the evidence that the plaintiff was seen by the defendant's motorman and conductor on its said east-bound car, moving toward its track on which its east-bound car was moving, and that she was in danger of being struck and injured by said car, and thereafter could have stopped said car, and averted said injury by stopping said car within the shortest time and space possible after so seeing plaintiff's danger, and neglected to do so, then the defendant is liable, although the jury should believe that the plaintiff did not exercise ordinary care to look or listen for said car."

That plaintiff was herself guilty of negligence directly contributing to cause the injury which she received, must go by the mere saying.    According to her own statement, she undertook to walk diagonally across Wash street, upon which she knew the defendant maintained double street railway tracks, and was operating its cars there from opposite directions, without having seen or heard the approach of the car that struck and ran over her, when from her own statement, as that of all the witnesses called in her behalf, it was shown that if she had looked in a westwardly direction from where

she attempted to cross the street, an approaching car could have been seen for two or more blocks away, From the testimony of plaintiff, and that given in her behalf, one of two inferences must be drawn, either that plaintiff saw the car and attempted to pass in front of it, or that she did not look for the car's approach and attempted to cross over the tracks in disregard of it, and in either case, she was guilty of negligence which at least contributed to her injury, and this too, notwithstanding her positive declaration that she looked west up Wash street to ascertain if a car was approaching from that direction, but saw none, both before she left the sidewalk and after she had stepped into the street and started to walk across it. Plaintiff's statement that she looked west and saw no approaching car, when to have looked, was to have seen the car, must be disregarded as a fact offered as an excuse for stepping upon defendant's track under the circumstances, and at the time and place she did.

In this connection, it may be well now to say, that if plaintiff's statement be given any consideration, that she saw not the car's approach that ran over her when she looked west up defendant's track, then the presumption which her counsel invokes, at this time, with so much earnestness as an excuse for plaintiff's going upon defendant's track when she did, becomes utterly unavailing to her. Counsel says: "She knew that the car had no legal right to be run faster than ten miles an hour; to do so the statute was violated. After she looked west and saw no car, endangering her, she had the right to proceed on her way relying upon an obedience by the defendant of the ordinance. She was guilty of no negligence in doing as she did."

As plaintiff did not see defendant's car, when she says she looked west up Wash street for it; as she did not know its location upon defendant's track, she had no data from which she might determine whether or not she could make her way across the defendant's track in

safety at a designated point or place before a car would reach there, based upon the presumption that defendant's servant would comply with the ordinances of the city regulating the speed of cars in that portion of the city to ten miles per hour.

By plaintiff's failure to see the car when and where it should have been seen, she was in no position to indulge a presumption as to the rate of its speed, that she might regulate her actions thereby. Plaintiff was not run over by defendant's car, on account of a miscalculation as to its rate of speed on the occasion in question, but because she undertook to pass over defendant's track without calculation or caution. Under the circumstances of this case the rate of the car's speed becomes a mere incident in the occurrence and is not to be reckoned as the cause thereof.

As plaintiff saw not the car on her way to defendant's track, according to her story, and as it is simply impossible that the car could have run eight or nine hundred feet or from a point somewhere on defendant's line beyond which the car was not in sight (to one who would see, if he or she should look) while plaintiff walked from where she says she last looked for the car while in the street, to the car track where she was injured, even though its speed had been at the extravagant rate of thirty miles per hour, we must infer that she had no data for calculation; no fact or facts warranting her to assume that she could pass defendant's tracks in safety if defendant's car was being run at the regulation speed of ten miles per hour; and it will not now do to say that, because some of plaintiff's witnesses have fixed the car's distance up the track west of the plaintiff 200 or 250 feet at the time she was seen to have stepped into the street and started across it, the presumption may be indulged in her favor, as an excuse for her conduct in attempting to pass over the track in advance of the car, or that she could have crossed the track in safety in advance of the car had

the car been run at the regulation rate of speed of ten miles an hour instead of being run as it was at 15 miles an hour. It can not be presumed that plaintiff acted upon the faith of facts of which she had no information. While we do not question the general proposition asserted by respondent's counsel, that every citizen of a community has the right to trust that every other citizen or corporation, acting in the capacity of a citizen, will obey the law, and to regulate his or her actions accordingly, except information to the contrary is known or might be known by the exercise of ordinary care and prudence, we do not see how its application can be made availing to his client under the facts of this case.

With the question of plaintiff's negligence disposed of, our next inquiry will be directed to the contention made by appellant's counsel, that no fact or facts were shown by plaintiff's testimony, authorizing the submission of the case to the jury, or authorizing the giving in her behalf of instruction numbered one above quoted, which in effect declares that, even though plaintiff was guilty of negligence on the occasion in question, she is still entitled to recover, if defendant's motorman saw the plaintiff in a position of danger in time to have stopped his car and averted the collision that resulted in her injury, or to use the language of the instruction, "and if the jury find from the evidence that the plaintiff was seen by the defendant's motorman and conductor on its said east-bound car, moving towards its track on which its east-bound car was moving and that she was in danger of being struck and injured by said car, and thereafter could have stopped said car, and averted said injury by stopping said car within the shortest time and space possible after so seeing plaintiff's danger, and neglected to do so, then the defendant is liable."

Certain it must be that no witness called by the plaintiff (or for that matter, no witness who appeared in the case), in direct terms testified that defendant's

servants in charge of the car that ran over and injured plaintiff, saw her in a place of danger or that she was going into a place of danger, a sufficient length of time before her injury occurred, to have stopped the car and averted said injury, or that they failed, after seeing plaintiff's danger, to stop the car as soon as possible; and if an instruction based upon that hypothesis is to be sustained, it must be from some inferential facts to be drawn from the direct facts proven.

All of the direct facts of any consequence disclosed by the plaintiff's testimony may be thus briefly summarized: The plaintiff, a lady of about 60 years of age, on the evening of November 12, 1899, was run over and injured upon Wash street in the city of St. Louis, by one of defendant's street cars that was being run at the rate of 15 miles an hour, as plaintiff was walking at her usual and customary gait diagonally across Wash street in a northeasterly direction; the view up and down said Wash street in the vicinity of the accident for several hundred feet was wholly unobstructed; no signal of the car's approach from the west was given closer than 200 feet from where the accident occurred; plaintiff at no time after she started across the street stopped or checked the regular speed of her walk until she was struck by defendant's car, and she neither saw or heard the approach of the car that ran over her, and yet was in the full possession of all her faculties, and defendant's motorman in charge of the car did nothing to check or slow down the speed of the car until about the time it struck plaintiff; and the car then ran about its length before it was brought to a complete stop. These are the substantial facts of plaintiff's testimony.

From these facts, and from every legitimate inference that may be said to flow from the proof of their existence, we fail to see how the jury could predicate a finding that defendant's motorman and conductor in charge of the car that ran over and injured plaintiff, either saw her in a place of danger for a sufficient

length of time, or that she was about to assume a place of danger, and after so seeing her perilous situation, failed to stop this car and avert the injury; or that they failed to stop the car in the shortest time and space possible after seeing plaintiff's perilous situation. Though the inference might be properly drawn, that defendant's motorman and conductor in charge of the car, saw the plaintiff from the time she stepped into the street until she was hit and run over by their car, from the testimony given by plaintiff's witnesses, that the view west up Wash street for several hundred feet from that locality was perfectly clear and unobstructed; yet with that inferential fact made by the jury in favor of plaintiff, upon what direct fact shown, or inferential fact authorized, would the jury look to find the existence of the further essential fact necessary to the establishment of plaintiff's cause of action, to-wit, that defendant's servants in charge of the car, after seeing plaintiff in the street, either saw, or by the exercise of ordinary care upon their part, might have seen her in a position of danger, or that she was about to assume a place of danger, for a sufficient length of time for them to have stopped the car and have averted the collision that injured plaintiff; or that the defendant's servants did not stop the car in the shortest time and space possible after seeing plaintiff's perilous situation? And without those essential facts, either directly or inferentially shown, no case was made by the plaintiff, and the trial court committed error in formulating an instruction predicated upon such facts, with direction to the jury that if they found and believed those facts to be true, they were authorized to return a verdict in favor of the plaintiff, notwithstanding her prior contributory negligence.

And this is also true even though the defendant, after its instruction in the nature of a demurrer to plaintiff's evidence was overruled, itself called as witnesses its motorman and conductor and they contra-

dicted the story told by plaintiff's witnesses as to the rate of the car's speed, the manner of plaintiff's walk and movement from the time she left the sidewalk until she was struck and run over by defendant's car, and the time and place where signals of the car's approach were given, and after telling when plaintiff was first seen by them, detailed how both they and the plaintiff demeaned themselves from that time forward until plaintiff was run over and injured.

This testimony on part of the defendant can in no proper sense be said to have supplied the omissions on part of the plaintiff to show by direct testimony the length of time plaintiff's perilous situation upon defendant's track was, or could have been observed by defendant's servants in the exercise of ordinary care upon their part before the car reached and ran over her, or to show facts from which the jury might properly infer that defendant's servants either saw plaintiff's perilous situation upon the track or that she was about to assume such perilous situation, for a sufficient length of time for them to have brought their car to a stop and have avoided plaintiff's injury. If the story as told by defendant's motorman and conductor is true, that the plaintiff on the occasion in question came to a stop, on her way across the street, within a few feet of the track upon which defendant's car was running, after the signal of its approach had been given, and that the plaintiff did not again start on her course across the street and step upon the car track until the car was within a few feet of her, and so close that it was impossible to have stopped the car before the plaintiff was run over, then she was not entitled to recover.

Or, if for any reason this testimony of defendant's should be ignored or should be rejected by the jury as unworthy of credence, where then would they find a word in the testimony from which they might determine that defendant's servants saw, or by the exercise of reasonable care, might have seen plaintiff in her po-

sition of peril, or that she was about to assume a position of peril upon defendant's track, for a sufficient length of time for them to have stopped their car and averted the injury to plaintiff?

According to every witness testifying in the case, whether for the plaintiff or defendant, who spoke upon the question as to the length of time plaintiff was upon defendant's track before she was struck and run over, they all, in one way or another, say it was but for an instant; thus, "she was struck by defendant's eastbound car just as she was in the act of stepping upon the track;" "when plaintiff stepped upon the track the car was within 10 or 12 feet of her;" "when I got very close to her she walked right out in front of the car and then it was too late to do anything." Most certain it is that plaintiff was not actually in a place of danger upon defendant's tracks for a sufficient length of time for defendant's servants to have seen her and thereafter have brought the car to a stop before she was reached and run over by it.

Equally certain it also is that nothing can be found in plaintiff's testimony showing that defendant's servants saw or knew, or that by the exercise of ordinary care upon their part, they might have seen or might have known that plaintiff was about to assume a place of danger upon defendant's track in front of their fast moving car, for a length of time sufficient for them to have brought the car to a stop and averted the accident. There was nothing in her manner, conduct or appearance shown, to indicate that she was unmindful of what she was doing, or that she was oblivious of her surroundings, or that she would attempt the reckless act of crossing in front of the car regardless of its rapid approach, until her last, or her two last steps were taken, and then no time was left in which defendant's servants could act and avert the injury. Plaintiff was shown at the time to have been a woman of mature years in the full possession of all her faculties, attempting to

cross, in a walk, a perfectly smooth and unincumbered street (save defendant's car tracks thereon, of which she was perfectly familiar) and with a view up and down the street in either direction unobstructed for two or more blocks distant, and according to plaintiff's own story, after she had turned her head and looked west up Wash street twice for the car's approach, once just before she stepped from the sidewalk into Wash street, and again after she had gotten into the street.

In the absence of testimony showing something in the manner, conduct or the appearance of the plaintiff at the time she was seen in the street by defendant's servants, that would indicate to them that she was unmindful of her surroundings, or, that regardless of them, she was intending to pass over defendant's track in advance of its fast moving car, the motorman and conductor had the right to presume that plaintiff would have stopped at some convenient distance in the street without the danger line of the car's fixed course, and permit it to pass in advance of her. They had the right to presume that she would conduct herself in the act of crossing the street, at that time and place, as an ordinarily prudent person would have done, and to have regulated their actions accordingly.

So, whether we consider the testimony of defendant's motorman and conductor, or that of the plaintiff and her witnesses, the result must be the same; an absence of facts upon which the jury were authorized to predicate a finding against the defendant.

The trial court erred in submitting the case to the jury; the jury erred in its finding under the circumstances, and as a result, the judgment entered upon said finding and verdict should be reversed, and it is so ordered.

All concur.