BORING, Appellant, v. METROPOLITAN STREET RAILWAY COMPANY.

Division Two, March 6, 1906.

1. **NEGLIGENCE: Crossing Street: Not Looking: No Bell: Concurring Negligence.** Plaintiff did not slacken his pace or look to see if a car was coming from the east from the time he left the sidewalk at the northeast corner of the intersecting streets and started to cross to the southeast corner until he was struck by a west-bound car, but was looking towards a car which was approaching from the west, and while observ-

ing the movement of that car he proceeded to cross and as he reached the north track a west-bound car, running very rapidly, without ringing any bell or giving other signal, struck him just as he saw it. Before leaving the sidewalk he looked east, but saw no car. There was no evidence that the gripman, by the exercise of due care and diligence, could have stopped the car, after plaintiff left the sidewalk, in time to have avoided the accident. *Held*, that the court rightly sustained a demurrer to the evidence.

2. ———: **Expert Witness: Stopping Train.** Where it has not been shown that the witness had, by practical tests and observation, qualified himself to express an opinion as to the distance within which a car could have been stopped without injury to the passengers, the court should not permit him to testify within what distance one of defendant's cable cars, running at its usual rate of speed, could be stopped.

Appeal from Jackson Circuit Court.—*Hon. Shannon C. Douglass*, Judge.

AFFIRMED.

*McCluer & Bowling* for appellant.

(1) The court erred in instructing the jury to find the issue for the defendant. Bunyan v. Railroad, 127 Mo. 12; Ennis v. Railroad, 155 Mo. 20; Morgan v. Railroad, 159 Mo. 262; Chamberlain v. Railroad, 133 Mo. 596; Werner v. Railroad, 81 Mo. 368; Fiedler v. Railroad, 107 Mo. 650; Donahue v. Railroad, 91 Mo. 357; Hunlan v. Railroad, 104 Mo. 381; Dunkman v. Railroad, 95 Mo. 244; Cooney v. Railroad, 80 Mo. App. 232; Klockenbrink v. Railroad, 81 Mo. App. 356; Dieter v. Cabareu, 81 Mo. App. 614; Sweeney v. Railroad, 150 Mo. 397; Baird v. Railroad, 146 Mo. 265; Hornstein v. Railroad, 70 S. W. 1104; Schafstette v. Railroad, 74 S. W. 829; Aldrich v. Railroad, 101 Mo. App. 77; Railroad v. Tartl, 39 C. C. A. 568; Turnbull v. Railroad, 120 Fed. 783; Railroad v. Ives, 144 U. S. 408; Murry v. Railroad, 108 Mo. App. 501; Hanheide v. Railroad, 104 Mo. App. 323; Holden v. Railroad, 76 S. W. 978; Septowsky v. Rail-

road, 76 S. W. 693; Murrell v. Railroad, 105 Mo. App. 88; Hinzman v. Railroad, 182 Mo. 611; Heinzle v. Railroad, 182 Mo. 528. (2) The court erred in refusing to permit witness Hanway to testify as to whether he knew the distance in which the cars could have been stopped, and, if so, in what distance.

*John H. Lucas* and *Chas. A. Loomis* for respondent.

(1) The court did not err in giving the peremptory instruction. Under the evidence plaintiff could not recover. Boyd v. Railroad, 105 Mo. 381; Van Bach v. Railroad, 171 Mo. 346; Guyer v. Railroad, 174 Mo. 351; Moore v. Railroad, 176 Mo. 546; McCauley v. Railroad, 179 Mo. 592; Ries v. Railroad, 179 Mo. 7; Roenfeldt v. Railroad, 180 Mo. 565; Reno v. Railroad, 180 Mo. 469; Giardina v. Railroad, 185 Mo. 335; Markowitz v. Railroad, 186 Mo. 350; Hite v. Railroad, 130 Mo. 132. (2) The court did not err in the rejection of evidence, and the cause would not be reversed if such was the fact, as the duty of the trial court would have been the same had the evidence been admitted.

BURGESS, P. J.—This is an action for damages alleged to have been sustained by plaintiff by being run against by one of defendant's cars, on or about the 12th day of November, 1900, in Kansas City, Missouri.

The petition alleges the incorporation of defendant and that it was operating a cable street railway on East Fifteenth street, in said city, and that plaintiff, while attempting to walk across said Fifteenth street, at the junction of Fifteenth and Cherry streets, was run against by one of the street cars operated by the defendant on its Fifteenth street line, and was knocked down, bruised, injured and damaged to the extent of ten thousand dollars, the precise injuries to plaintiff being set forth. The petition further sets forth that when the plaintiff started to cross said street, he looked for

cars on said railway, and saw one going east, nearly op-
posite to where he was attempting to cross, but did not
see a car coming from the east, and that believing he
could cross the said railway in safety, in front of the
east-bound car, with his face to the west watching the
east-bound car, proceeded to walk across said Fifteenth
street from a northwest to a southeast direction, and
while so walking across said Fifteenth street with his
head so turned to the west, a train from the east on the
defendant's railway came along said Fifteenth street
a short distance to the east of where this plaintiff was
so crossing said street, without ringing the bell, or mak-
ing any effort to notify this plaintiff of the approach
of said train, and while this plaintiff was so walking
across said street in full view of the gripman operating
the car coming from the east, and while the gripman
on the said train could plainly see and did see, or by the
exercise of ordinary care should have seen him, in time
to have sounded an alarm and notified this plaintiff, and
in time to have avoided accident by stopping his car.
That while the plaintiff had his head turned away from
said west-bound car and was unmindful of the same or
of its approach, said gripman drove said car along said
track at full speed and into and against plaintiff, when
said gripman well knew that plaintiff was looking at
and watching the east-bound car and was unaware of
the approach of the west-bound car; that by the exercise
of ordinary care said gripman could have stopped said
west-bound car and avoided the injury to plaintiff. That
plaintiff had no knowledge of the approach of said west-
bound train until so short a time before it struck him
that it was impossible for him to get out of the way of
same, and that the collision occurred at or near the
center of the crossing of said Fifteenth street at Cherry
street, and that if the defendant had rung the bell or
sounded the alarm as said train approached said cross-
ing at Cherry street, the plaintiff's attention would
have been attracted to the approaching of said train in

time for him to have gotten off said track before he was struck. That said accident was caused by the carelessness and negligence of defendant's servants and employees in failing and neglecting to ring the bell or sound an alarm as they approached said crossing, and carelessly and negligently failing to ring a bell or sound an alarm after said servants and employees saw, or by the exercise of ordinary care should have seen the plaintiff was going onto said track ahead of said train unaware of its approach, and was, without knowing it, placing himself in a dangerous position, and carelessly and negligently failing and refusing to stop or slow up said car after the said servants saw or by the exercise of ordinary care should have seen that plaintiff, unaware of the approach of said train, was approaching the track and placing himself in a dangerous position, and in carelessly and negligently failing and refusing to stop or slow up the said car in time to prevent injuring plaintiff.

The defenses were a general denial and a plea of contributory negligence.

The salient facts are about as follows:

The defendant was operating a double-track street railway on East Fifteenth street in Kansas City. The cars going east used the south track, and those going west, the north track. Two different lines were operated over this street by defendant, one known as the Fifteenth street line, using yellow cars, and running east and west on said street; the other, known as the Holmes street line, using red cars, and running east on said street to Holmes street, and then turning south on Holmes, both lines using the same tracks as far east as Holmes street. The evidence tends to show that the injury of which plaintiff complains took place on November 24th, 1900, where Cherry street, the first street west of Holmes, crossed Fifteenth; that Fifteenth street, from Holmes west to Cherry, is almost level,

but at Cherry it ascends quite a little to the next street, Locust; that at a point about half way between Cherry and Locust, and about 150 feet west of Cherry, the east-bound cars would stop to drop the rope, and would then, before starting, ring a bell to attract the attention of a flagman stationed at Holmes street, who would signal when to start; that Cherry street was about 30 or 35 feet wide between the curbing; that Fifteenth street at that place was about 50 feet wide from the curbing and about ten feet from the curbing on either side to the building line; that the tracks of the railway were in the center of the street, the outside rails on each side of each track being about 15 to 18 feet from the curbing; that there were two gas street lights at this crossing at Cherry street, one at the southeast and the other at the southwest corner, making the light such that a man could be seen for a block or more. The above, in relation to the place where the injury happened, is shown by the evidence of Andrew Stone. This witness owned and operated a barber shop at the southeast corner of that crossing, and it was to his shop, a little before eight o'clock in the evening, that the plaintiff was going when injured. The evidence of the plaintiff showed that he was the janitor of flats at Fourteenth and Holmes streets, and went that evening from the flats to a little bakery on Fifteenth street near Locust, and from there started east, on the north side of Fifteenth street, to go to Stone's barber shop, and proceeded as far as the sidewalk on the west side of Cherry. Just as he got there, an east-bound car which had stopped to let go the rope and wait for signals, rang its bell and attracted his attention. He looked and saw that car, and then, to use his own language, "I turned and looked the other way, and there was no car coming, and I just came right across there, east on Fifteenth and on to the curb; I did not go to the curb. I then turned, quartering, you might say, a little east of south, and started to the barber shop. I was watching this car—

the east-bound car. I had my head turned to the south-
west." When on the north track a west-bound car
struck him, and the blow rendered him unconscious.
Plaintiff testified that he never saw the car that injured
him until just as he was struck; that the gripman on that
car did not ring the bell, and that if it had been rung he
would have heard it. He fully described his injuries,
which he said were permanent and that one arm was
rendered useless for life.

Thomas Hanway testified that he passed over this
line at about the time of evening that this injury oc-
curred, and under similar lights and conditions; that
one could see a party approaching the car tracks at this
crossing, and see the way his head was turned and the
way he was looking, at a distance of more than sixty
feet.

Mat C. Stone, a witness, testified that when plain-
tiff was walking south, just before the injury, he was
watching the Holmes street car; that plaintiff was with-
in three or four feet of witness when he turned to cross
Fifteenth street, and that the west-bound car struck him
just after he stepped on the track; that he, witness, did
not hear the bell ring before the accident.

At the conclusion of plaintiff's evidence the court,
over the objection and exception of plaintiff, instructed
the jury that, under the pleadings and evidence, their
verdict must be for the defendant.

Plaintiff insists that the gripman on said west-
bound car saw, or could have seen him before the car
approached within sixty feet of the crossing, and that
he saw, or could have seen, that plaintiff was placing
himself unknowingly in a dangerous position, and
should have taken measures to avoid injuring him; that
the car was going at full speed and gave no warning of
its approach, and that as the gripman failed to give
such warning, as was his duty to do, the company is
liable.

The evidence shows that the east-bound car, when

it first attracted plaintiff's attention, was standing still at a distance of about half a block west of him, between Cherry and Locust streets, and was ringing for a signal from a flagman stationed at the intersection of Fifteenth and Holmes streets in order to proceed, and that the distance between said car and the place where plaintiff was injured by the west-bound car was about one hundred and ninety feet. Plaintiff testified that he heard the bell ringing, and knew that the car, before moving, would have to receive a signal from the said flagman, and that the west-bound cars would also have to pass the flagman; that before he left the sidewalk at the corner of Fifteenth and Cherry streets he looked east to see if a car was coming, but saw none, and that he did not look any further for a car coming from that direction; that he then walked across Cherry street to within a distance of a few feet from the opposite or northeast corner, when he turned south in order to cross Fifteenth street and reach a barber shop on the southeast corner of Fifteenth and Cherry streets; that in the meantime the east-bound car had started down the grade between Cherry and Locust streets and again attracted his attention, and as he was in the act of crossing the other track, or the one nearest him, on the north side of Fifteenth street, he was struck by the west-bound car.

It is not contended that plaintiff was not guilty of negligence in attempting to cross the track, without looking east to see if a car was approaching on that track, but that defendant was guilty of negligence concurrently with plaintiff, and that the gripman of the car knew, or by the exercise of proper diligence might have known and observed, that it was plaintiff's purpose to cross the track in front of the car, and could have stopped the car in time to have avoided the injury. Plaintiff testified that he did not slacken his pace, or look to see if a car was approaching from the east, from the time he left the sidewalk at the northeast cor-

ner of Cherry and Fifteenth streets until the moment the car struck him. The distance between the point where he made the turn, at the northeast corner of said streets, and the point where he attempted to cross the track was but comparatively a few feet, and there is no evidence tending to show that the gripman could, by the exercise of due care and diligence, have stopped the car in time to have prevented the accident. The evidence shows that the plaintiff was unobservant, careless of his safety, and walked into danger. There is nothing disclosed by the record which would justify the submission of the cause to the jury.

In a somewhat similar case to this (Boyd v. Railroad, 105 Mo. 1. c. 380), BRACE, J., in speaking for the court, said:

"But it is contended that as the walk on which the deceased was pursuing his way to the depot was in plain view of defendant's engineer on the locomotive, and the deceased could have been seen upon it, in haste making his way toward the depot, the engineer ought to have commenced checking the speed of his train in time to have permitted the deceased to cross before it in safety. To this position the instructions given in this case furnish a full and complete answer in declarations of law supported by all the authorities, 'that it was the duty of deceased to look and listen if he could see or hear the train, for the purpose of avoiding injury by it, and, if at any time he might have stopped his progress and avoided injury, then he was guilty of contributory negligence;' and, 'if the servants of the defendant in charge of its train saw the deceased approaching the track, then they had the right to presume that he would not attempt to cross the track immediately in front of the train, and to proceed without abating the speed of the train.' If the instructions had stopped here, the law of the case would have been properly declared on the evidence, which is equivalent to saying there was no evidence to take the case to the jury, and

this must be so; for assuming that the engineer saw the deceased from the moment he left the hotel until he arrived within twenty or twenty-five feet of the track, when it was beyond the power of the engineer to control the speed of the train so as to avoid the collision, what could he have seen? Simply a man of mature age, of quick and active movements, in haste making his way to the depot, on the walk to the crossing, possibly in the rain, wearing a slouch hat, who could stop at any moment; who could see and hear the train; who apparently, and in fact, was in possession of all his mental faculties, and perfect master of his movements; what could the engineer presume, but that such a man, like all other men, having due regard for their own safety, and governed by the ordinary instincts of human nature, would stop before he reached the point of peril patent before him? Into his mind he could not look and see what was passing there. But not until he actually entered upon the track and attempted to cross before the moving train, and when it was too late for the engineer to do anything to save him, was there anything disclosed in his manner or movement to lead to the conclusion that he would not act intelligently and rationally, and while yet a safe distance from the approaching train would not stop and permit the train to pass by before attempting to cross, if he found that he could not with safety do so before it. Unless the doctrine of contributory negligence is to be entirely discarded, and engineers required to be such expert psychologists as to be able to read the minds of men, and know beforehand when a man in the possession of all his mental faculties is going to act in a way other than could be expected of an ordinarily prudent man, there was no evidence to take this case to the jury.''

In the case of Van Bach v. Railroad, 171 Mo. l. c. 346, VALLIANT, J., speaking for the court, says:

''But in this case, what reason had the defendant's servants to suppose that this man would act as he did?

Could they infer that he did not see what was going on before his eyes? Every one else who was there, including the plaintiff's witnesses, saw what was being done. Not one of them was in a better position to observe the movements of the train and the cars than the deceased. Conceding that the flagmen ought to have signaled him to stop before he crossed the Wabash tracks, and failed to do so, or conceding that there was no watchman there at all, still if the deceased had used his eyes he would have seen all that the watchman could have called to his attention. It required no expert to understand the situation; it was a matter within common every-day experience in city life. If the employees of defendant saw the deceased approaching the crossing in a slow trot, in full view of the moving cars, had they not every reason to suppose that he would stop when he had driven close to the crossing as was prudent, and wait until the car had passed? That is what the plaintiff's witness who was going the same direction did, and that is what any reasonable man looking on would suppose any other reasonable man would do. We are referred to Morgan v. Railroad, 159 Mo. 262. But the case at bar is not that of a man walking along the track with his back to the coming train apparently oblivious to the danger. If this train crew saw the deceased coming and saw that he was in a position where he could not fail to see the car approaching the crossing if he used his sense of seeing, they were not negligent if they assumed that he would act as any reasonable man would for his own protection under like circumstances, and regulated their own actions accordingly.'' [Guyer v. Railroad, 174 Mo. 344; Moore v. Railroad, 176 Mo. 528.]

In Roenfeldt v. Railroad, 180 Mo. l. c. 565, VALLIANT, J., said:

''But the theory of the plaintiff's case, as shown in his petition, his evidence and the argument in his brief, is that, admitting that the plaintiff through his own negligence put himself in a position of peril, yet the

case falls within the exception to the rule that one cannot recover for injuries received in consequence of his own contributory negligence.  The exception to the rule is that when the defendant sees (or in some cases when by the exercise of ordinary care he might see) the plaintiff in a position of peril, and, with the means then at hand, is able, by the exercise of ordinary care, to avert the injury, but neglects to do so, he is liable.  Under those circumstances the defendant is adjudged guilty of such reckless or wanton disregard of human life or limb that he is not exonerated by showing that the plaintiff was also negligent.  Is there anything in the evidence in this case to show such a reckless or wanton disregard of duty on the part of the defendant's servants in charge of this car?  Is there any evidence tending to show that after the motorman or motormen saw the plaintiff in peril they could have stopped the car in time to avert the catastrophe?  .  .  .  Plaintiff was guilty of negligence which contributed to his injury and there is nothing in evidence tending to show that the motorman could have stopped the car in time to have prevented the collision after the plaintiff put himself in the position of peril.''  See, also, Reno v. Railroad, 180 Mo. 469; Giardina v. Railroad, 185 Mo. l. c. 335; Markowitz v. Railroad, 186 Mo. l. c. 350.

It is also insisted that the court committed error in refusing to allow one Hanway, a witness for plaintiff, to testify as to whether he knew within what distance one of defendant's cable cars, when running at its usual rate of speed, could be stopped, and if so, to state within what distance it could be stopped without injury to the passengers.  The court refused to allow the witness to answer the questions upon the ground that it had not been shown that witness was qualified to express an opinion upon the matter.  We think the court properly refused to allow the witness to answer, for the reason that it had not been shown that he had, by practical tests and observation, qualified himself to

express an opinion as to the distance within which one of the said cars could be stopped under the conditions stated. From our view of the case, whatever might have been elicited from the witness, if allowed to answer the questions, it would not have changed or affected the result.

The facts clearly show that plaintiff's injury resulted from his own negligence solely, for which 'the defendant should not be held liable.

The judgment is affirmed.

All concur.