TILLIE WOODWARD, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, January 16, 1911.

1. **RAILROADS: Negligence: Crossing.** Plaintiff, a girl 17 years old, was driving a gentle horse hitched to a buggy over the railroad tracks on a public crossing in the city of Brunswick, when a passenger train, running thirty-five or forty miles as hour, struck her buggy, throwing her out and injuring her. When thirty-five feet from the crossing, she stopped and looked to the west and listened, then she looked to the east and saw an engine moving back and forth and, satisfied that it was not coming

to the crossing, started forward. Her view to the westward was somewhat obstructed by a warehouse near the track, but she could see down the track in that direction four hundred feet, and no train was in sight at that time, nor could she hear the noise or rumble of any train. She did not look westward again until her horse was on the track, when she saw the train coming at high speed and close to the crossing. No bell was rung. *Held*, that the conduct of plaintiff, and also of defendant, was an issue for the jury to determine.

2. ———: ———: Instruction. An instruction which declared as a matter of law that plaintiff was in the exercise of reasonable care if she stopped at a point twenty or twenty-five feet from the danger line, looked and listened and could not see or hear the train, is erroneous.

Appeal from Saline Circuit Court.—*Hon. Sam Davis*, Judge.

REVERSED AND REMANDED.

*J. L. Minnis* and *Scbrec, Conrad & Wendorff* for appellant.

(1) The court committed error in overruling the demurrer to the evidence and refusing the instruction in the matter of a demurrer offered by the defendant at the close of all the evidence. Schaub v. Railroad, 133 Mo. App. 444; Gumm v. Railroad, 141 Mo. App. 306; Schmidt v. Railroad, 191 Mo. 215; Green v. Railroad, 191 Mo. 131; Walker v. Railroad, 193 Mo. 453; Stotler v. Railroad, 204 Mo. 619; Hayden v. Railroad, 124 Mo. 566; Huggart v. Railroad, 134 Mo. 679; Sanguinette v. Railroad, 196 Mo. 466; Boring v. Railroad. 194 Mo. 541; Reno v. Railroad, 180 Mo. 469; Kelsay v. Railroad, 129 Mo. 372.  (2) The court committed error in the admission of incompetent testimony offered on the part of the plaintiff by experts in that said testimony invaded the province of the jury, and stated a conclusion and an ultimate fact in issue. Roscoe v. Railroad, 202 Mo. 576; Taylor v. Railroad, 184 Mo. 239; Longan v. Weltmer, 180 Mo. 322.

*J. A. Collett and John T. Barker* for respondent.

This case was properly submitted to the jury for their determination and the court did not err in overruling defendant's demurrer. Sonnor v. Railroad, 129 S. W. 777; Mitchell v. Railroad, 122 Mo. App. 51; McNamara v. Railroad, 114 S. W. 51; Powers v. Railroad, 202 Mo. 267; Stotler v. Railroad, 200 Mo. 107; Palmer v. Railroad, 142 Mo. App. 633. (2) No error was committed in the admission of testimony offered on the part of the plaintiff. The question and answers were proper, and no exceptions were saved. Thomas v. Railroad, 125 Mo. App. 133; Garard v. Coal Co., 207 Mo. 242; Saeger v. Railroad, 131 Mo. App. 282; Young v. Railroad, 126 Mo. App. 1. (3) Plaintiff's instructions are not subject to the criticism defendant makes, but properly declare the law. Connor v. Railroad, 129 S. W. 777; and cases cited under point 1. (4) The rule is that the instructions will be taken as a whole and if, when read together, they properly declare the law, they cannot be condemned. Harrod v. Packing Co., 125 Mo. App. 357; Jaffi v. Railroad, 205 Mo. 450; Eisiminger v. Stanton, 129 Mo. App. 403. (5) This case was fairly tried and the verdict for the right party and should not be disturbed. Where apparent justice has been done, appellate courts will not interfere. Atkins v. Grain Co., 130 Mo. App. 547; Huff v. Railroad, 213 Mo. 495; Hess v. Railroad, 127 Mo. App. 304; R. S. 1899, sec. 865. (6) The verdict is not excessive.

JOHNSON, J.—This is a suit for damages based on the alleged negligence of defendant in the running of a passenger train over a street crossing in the city of Brunswick. Plaintiff prevailed in the circuit court where she recovered judgment for seven thousand five hundred dollars, and defendant brought the case here by appeal. Plaintiff, who was seventeen years old at the time of her injury (September 12, 1904), drove to

Brunswick from her home two and one-fourth miles south of that city, and started to return at about eleven o'clock in the forenoon. Her conveyance was a single buggy drawn by the family horse which was twenty-nine years old, very gentle and so slow that it required an hour for him to travel the distance between plaintiff's home and the city. The principal way of travel to the country south of the city was over Quincy street which runs north and south and crosses defendant's railroad tracks at right angles. Plaintiff turned into this street; drove south, and was passing over the crossing when the rear end of her buggy was struck by an east-bound passenger train and she was hurled into the air and thrown thirty feet to her serious injury.

The negligence pleaded in the petition consists of the acts of running the train through the city at an excessive rate of speed; in failing to give any crossing signal or warning of the approach of the train and in failing to stop or give warning signals after the enginemen saw, or should have seen that plaintiff was in peril. The last mentioned charge of negligence was abandoned by plaintiff in the instructions asked by her and the cause was submitted on the issues raised by the other pleaded acts of negligence and the averment of contributory negligence in the answer. To support her allegation of excessive speed, plaintiff pleaded and proved an ordinance of the city prohibiting the running of trains within its limits at a greater speed than ten miles per hour and evidence introduced by plaintiff tends to show that this train was about twenty minutes late; was running approximately forty miles per hour and that the bell was not rung nor the whistle sounded for the crossing.

Defendant earnestly contends that notwithstanding this evidence its request for a peremptory instruction should have been given on the ground that plaintiff's contributory negligence unquestionably is established by

her own evidence considered in the light of the indisputable physical facts of the occurrence.

Facts in evidence pertinent to this contention thus may be stated: The main track on which the train ran comes from the west to Quincy street on a tangent and practically on a level grade. Immediately north of the right of way and on the west side of the street was a large tobacco warehouse, the southeast corner of which was thirty-five feet north of the center of defendant's main track. Between this track and the warehouse was a switch track, the north rail of which was about fifteen feet from the corner of the warehouse, and the south rail was about eight feet north of the north rail of the main track. West of the warehouse and nearer to the railroad was a lumber yard fence which plaintiff claims was an obstruction to her view in that direction but defendant's witnesses deny that the fence constituted such obstruction. Plaintiff could not see the track to the west until she emerged from behind the warehouse and she claims that as soon as she passed that obstruction she stopped and looked westward. She could see only about four hundred feet down the track and no train was in sight. Looking eastward she observed an engine moving back and forth on the switch track and, satisfied that it was not coming to the crossing, started forward. At that time her horse was at the switch track. She did not look again to the west until her horse had crossed the switch track, the space between the tracks, and was on the main track when, looking westward again, she saw the passenger train coming at high speed and close to the crossing. By vigorous whipping she urged the horse to a faster gait and had almost succeeded in getting over the crossing when the engine struck the extreme rear of the vehicle. Until she began whipping him, the horse traveled in a slow walk, probably at a speed of from two and one-half to three miles per hour, and as he traveled about thirty-five feet from

the place of the stop to the place of collision, approxi-
mately ten seconds elapsed between these two events.

Defendant introduced in evidence a plat prepared
by a surveyor and drawn to scale and also some photo-
graphs which appear fairly to represent the scene of
the accident. It also introduced the county surveyor
who testified to the accuracy of the plat and said the
lumber yard fence did not offer any obstruction to the
vision of one looking westward down the track from a
point in the street opposite the southeast corner of the
warehouse. The plat shows, however, and the witness
stated that a person driving south would emerge from
behind the warehouse at a point thirty-six feet north
of the center of the main track and from that point
could see only four hundred feet westward along the
main track. Three feet further south he could see eleven
hundred feet and three feet still further he could see
sixteen hundred feet.

These are the facts on which defendant bases the
contention that we should declare as a matter of law
that plaintiff's statement that she could see only four
hundred feet along the track when first she looked is
unworthy of belief for the reason that it is at war with
the plain physical facts of the situation. In support
of this position we are cited to the following cases:
Schaub v. Railway Co., 133 Mo. App. 444; Gumm v.
Railway, 141 Mo. App. 306; Schmidt v. Railway, 191
Mo. 215; Green v. Railway, 192 Mo. 131; Walker v.
Railroad, 193 Mo. 453; Stotler v. Railroad, 204 Mo. 619;
Hayden v. Railway Co., 124 Mo. 566; Huggart v. Rail-
road, 134 Mo. 673; Sanguinette v. Railway, 196 Mo. 466;
Boring v. Railway Co., 194 Mo. 541; Reno v. Railway
Co., 180 Mo. 469; Kelsay v. Railway Co., 129 Mo. l. c.
372.

We regard the question of whether or not the lum-
ber yard fence was an obstruction to plaintiff's west-
ward view of the track as a debatable issue of fact.
Credible witnesses for plaintiff say it was such obstruc-

tion, equally credible witnesses for defendant say it was not. The photographs introduced by defendant do not determine that issue. We are aware that the art of photography is so advanced that often there is as much variance between the results of plaintiff and defendant photography as there is between opinions of expert witnesses of the respective parties. Courts should be careful not to give too much credit to the testimony of pictures. With them as with so many other things so much depends on the point of view and the artist's touch. But in the present instance, there is no need to look with suspicion on the photographs since we find they are quite neutral respecting the issue under consideration. Should it be true that the fence was no obstacle, still we find no occasion for utterly discrediting the statement of plaintiff. There is not much difference between her statement of what could be seen and that of defendant's surveyor and the story told by the plat. Making due allowance for the distance between the head of her horse and where plaintiff sat in the buggy, the point where she says she stopped and looked was only five or six feet south of the corner of the warehouse. She says she could see the track only four hundred feet to the west and the plat shows that statement would be true if her viewpoint had been at the place where first she came from behind the warehouse. It is possible that plaintiff did not and could not locate the exact spot from which she looked, and it is also possible that the plat may be a little inaccurate. The vital point on which the parties agree is that the first view afforded her after passing the warehouse extended westward no greater distance than four hundred feet. We must assume she stopped at that point and the next subject that engages our attention is the insistence of defendant that the train must have been visible to her. As is usual in such cases, the witnesses differ widely about the speed of the train. Defendant's fireman says it was only seventeen or eighteen

miles per hour while plaintiff's witnesses say it was from thirty-five to forty miles per hour. For the purposes of the demurrer to the evidence, we must accept as true the reasonable evidence most favorable to plaintiff. The train was overdue and, being a passenger train, we assume it was going thirty-five or forty miles per hour and, assuming that ten seconds elapsed between the time plaintiff first looked and the collision, we must say the train was more than four hundred feet from the crossing at the time of the first mentioned event, and that plaintiff did not and could not see it. We cannot declare as a matter of law that plaintiff could have heard the train had she listened attentively. According to her evidence the bell was not rung and it is a fair inference that the engine was not "making steam." Under some conditions approaching trains are noiseless until they are near at hand. Another engine was moving a short distance to the east. The air of cities and towns is always burdened in the daytime with the hum of countless noises. Under all the circumstances we think the question of whether plaintiff should have heard and realized that the train was approaching was an issue of fact for the jury.

The next and most serious question arising from the demurrer to the evidence is that of plaintiff's conduct in going into a position of peril without looking but once in the direction of the train. Some six or seven seconds passed during her progress from the place where she stopped to the point where she passed into the danger zone. It has been held repeatedly that a railroad track is such a dangerous place that a traveler crossing it must be attentive to his safety from the time he approaches the first danger line until he passes over the last. To be within the limits of reasonable care, he cannot take a last look from a place of safety and then shut his eyes and ears and go on blindly trusting in Providence and the belief that the railroad company will observe due care in the operation of its trains. Having

eyes and ears, he must use them as a reasonable, careful and prudent man would use them and not trust his safety to others when he is in a situation to take care of himself. But of necessity a traveler is compelled to place some reliance on the care of others. Plaintiff knew that the bell should be rung and also that there was an ordinance limiting the speed of trains to ten miles per hour. She was justified in assuming, from the fact that she could see four hundred feet and no train was in sight or hearing, that the way was clear and she could cross in safety. It is true she was not absolved from the exercise of constant attentiveness but she had other places to look and other things to engage her attention that were legitimate and natural subjects of attention. She had to look to the east as well as the west and there was an engine east of her on the first track that she had to observe. We do not feel justified in condemning her in law for withdrawing her attention a few seconds from the direction where appearances indicated the absence of danger and bestowing it in another direction from which danger might come. We conclude that plaintiff's conduct was an issue for the jury as was also the conduct of defendant and that the demurrer to the evidence was properly overruled.

But the judgment must be reversed and the cause remanded on account of prejudicial error in the second instruction given at the request of plaintiff as follows: "The court instructs the jury that plaintiff had a right to presume that defendant in the running of its train would obey the law, both in regard to the giving of signals as set out in these instructions, and in regard to the speed of its trains as defined in other instructions herein. If therefore you shall find and believe that the plaintiff in approaching defendant's track, and about the time she reached a point opposite the factory building referred to in the evidence, either stopped her buggy or slowed up to almost a standstill, and looked as far to the westward as she could see from

said point to a distance of four hundred feet or more, and listened for any train that might be approaching upon said track and that she could not at that time see or hear any approaching train; and if you further find that if the train that collided with her had been run at a reasonable and lawful rate of speed as defined by these instructions that she would have had ample time to have crossed defendant's track in safety, then, and in that event, her attempt to cross the track under the circumstances detailed in the evidence in this case was not such contributory negligence as will defeat her recovery."

In that instruction the court invaded the province of the jury in declaring as a matter of law that plaintiff was reasonably careful if she stopped at a point twenty or twenty-five feet from the danger line, looked and listened and could not see or hear the train. A reasonably careful and prudent person in the situation of plaintiff might or might not have looked again before going into a place of peril but that was a question for the jury. As we said before, the duty of attentiveness in such cases is a continuing duty and the instruction clearly ignores that rule. It is a very serious question whether plaintiff was justified under all the facts and circumstances in evidence in relying as much as she did on deceptive appearances and certainly the court was not warranted in indulging a dogmatic conclusion that as a matter of law she acted with reasonable care during a period when, by merely looking in the right direction, she could have seen the danger and avoided it.

The judgment is reversed and the cause remanded All concur.