## GREEN v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Division One, December 21, 1905.

1. **NEGLIGENCE: Of Both Parties.** Conceding that the train was being run at an unlawful rate of speed and that the bell was not being rung and that therefore defendant was negliget, yet, as the uncontradicted evidence is that there was a place of safety eight feet wide adjoining the track, on the sidewalk, and that from that place there was an unobstructed view of the track for three hundred yards, and that plaintiff's wife as she walked across that place did not look, but walking fast, and with her head turned neither to the right nor to the left, stepped on the track immediately in front of the on-coming engine, she was guilty of such negligence as bars recovery by her husband for her death.

2. ——: ——: **Case Built on Conjecture.** The court will not uphold an argument built on the assumption that ·deceased, without pausing and without turning her face as she was about to step on the track, could, by simply turning her eyes, have seen the on-coming train ·for a distance of 200 or 300 feet, and that in keeping with the law of self-preservation, which courts will recognize, she should be presumed to have done so, and that having done so she trusted that the men in charge of the train were obeying the ordinance and running no faster than it permitted and therefore calculated that she could in safety cross the track before the engine reached her, if, under the evidence, it would be mere conjecture to assume that she made such a side glance.

3. ——: ——: **Speed Ordinance: Presumption of Observance.**
If one sees or has reason to believe that a train or engine on
a track which he is about to cross is running at a rate of speed
in excess of that permitted by ordinance, he has no right to
risk his life on a presumption that the ordinance is being ob-
served.

4. ——: **Inconsistent Positions.** Plaintiff rests his case on two
propositions: first, that deceased saw the engine coming and
trusted that it was running within the limits of the speed or-
dinance; second, that she did not see it and trusted that none
was coming because she did not hear the bell. *Held*, that these
positions are inconsistent, and being such plaintiff may take
either he chooses, but he cannot take both.

5. ——: **Failure to Give Signal: When Burden Not Shifted.**
Ordinarily plaintiff makes out a prima-facie case when he
shows the statutory signal was not given and that the accident
occurred, and having done that the burden is then shifted to
defendant to show that the failure to give the signal was not the
cause of the accident. But where plaintiff in proving the acci-
dent also proves that it was not caused by a failure to give the
signal, or that the person injured was guilty of negligence that
directly contributed to the accident, there is nothing for de-
fendant to prove.

Appeal from Franklin Circuit Court.—*Hon. John W.
McElhinney,* Judge.

REVERSED.

*Martin L. Clardy* and *Wm. S. Shirk* for appellant.

(1) The undenied and undisputed evidence in
this case, in fact, the plaintiff's own evidence, makes
this a clear case of contributory negligence upon the
part of plaintiff's wife. Every eye-witness to the ac-
cident, both for the plaintiff and defendant, strongly,
pointedly and repeatedly testified that Mrs. Green
hurried across the track on which the freight train
stood, and then on across the space between the two
tracks, and on the track on which she was struck, look-
ing straight ahead of her, neither to the right nor to
the left, and stepped upon the track immediately in

front of the engine, and was struck by it the moment she stepped on the track. Such conduct constitutes negligence which bars the plaintiff from recovery. Moore v. Railroad, 176 Mo. 528; Carrier v. Railroad, 175 Mo. 470; Guyer v. Railroad, 174 Mo. 344; Van Bach v. Railroad, 171 Mo. 338; Hook v. Railroad, 162 Mo. 569; Sharp v. Railroad, 161 Mo. 214; Mirrielees v. Railroad, 163 Mo. 470; Elliott on Rys., sec. 1166, and note p. 1776; Kelsoy v. Railroad, 129 Mo. 362; Hayden v. Railroad, 124 Mo. 566. This case but shows a repetition of the old, old story—stepping off of a track on which there was no danger, on to another, immediately in front of a train. Tanner v. Railroad, 161 Mo. 497; Vogg v. Railroad, 138 Mo. 180; Maxey v. Railroad, 132 Mo. 1; Harlan v. Railroad, 64 Mo. 480. It has always been the law in this State that a person who goes upon a railroad track or proposes to cross it must use his eyes and ears to avoid injury and must be vigilant and watchful of the approach of a locomotive. The failure to exercise such vigilance is negligence *per se,* and precludes a recovery. Boyd v. Railroad, 105 Mo. 371; Harlan v. Railroad, 64 Mo. 480; Butts v. Railroad, 98 Mo. 272; Weller v. Railroad, 120 Mo. 635; Watson v. Railroad, 133 Mo. 250; Holwerson v. Railroad, 157 Mo. 216; Moore v. Railroad, 176 Mo. 544. And this is true, although the defendant's train may have been running in excess of ordinance speed. Moore v. Railroad, 176 Mo. 528; Van Bach v. Railroad, 171 Mo. 338; Kries v. Railroad, 148 Mo. 328; Weller v. Railroad, 120 Mo. 635; Baker v. Railroad, 122 Mo. 533; Payne v. Railroad, 136 Mo. 562; Prewitt v. Eddy, 115 Mo. 283. So that it seems to us that there can be no doubt that the court below should have sustained defendant's demurrer to plaintiff's evidence. (2) And, as the defendant's evidence did not aid the plaintiff's case, the defendant's peremptory instruction to find for the defendant, at the close of all the evidence, should have been given. Weber v. Railroad, 100 Mo.

206; Eberly v. Railroad, 96 Mo. 361; Glover v. Bolt, 153 Mo. 342.

*James Booth, William McNamee* and *A. R. Taylor* for respondent.

(1) The doctrine of contributory negligence and its application by the court as a matter of law, has been very greatly advanced, it must be conceded. The courts have laid down as a hard-and-fast rule of human action what a citizen when passing over a railway track on a public highway must do. He or she must use ordinary care in looking and listening for an engine or train and to avoid danger therefrom. We say ordinary care in looking and listening for a train, because no case has yet held more than this, or, in other words, there is no authority yet for a contention that a citizen must exercise extraordinary care in the manner of watching for a train and escaping danger therefrom. It is an absolute truth based upon physical laws that no person endowed with good sight and good sense of hearing might not by a high exercise or the highest exercise of these faculties see or hear the approach of any train in time to avoid injury from such train unless fastened upon the track and physically unable to get out of the way of the train. Therefore, no court has ever held that in watching for a train and avoiding injury from it a person must do more than look and listen as any ordinarily prudent person would look and listen. The fact that he or she could possibly see or hear of the approaching train and fails to do so does not, as a matter of law, make him or her negligent; to hold that it does, would be holding that the citizen must insure himself against any and all negligence on the part of the railroad. That deceased might, by using a high degree of care, have seen this engine and realized the speed at which it was running and have avoided the danger from it by not going upon the

track, no one can question. It was possible under the law of physics for her even before she passed across the side track on which the freight engine stood, and before she could see the engine that killed her, to have, by intently listening, realized that there was another engine on that track which might imperil her passage and have stopped and saved herself. If a failure to do so rendered her conduct negligent, then there is no case, and no case can ever be made, where a person is killed by a railroad upon a public crossing no matter how gross the negligence of the railroad. The law does not require of a citizen in the exercise of his right to cross a railway track at a public crossing that he do more than exercise ordinary care under the circumstances to avoid being injured. Ordinary care requires that he use his senses as a reasonably prudent person would do to save himself from injury, and the law in the first instance presumes in every instance that the citizen does exercise such care. The above rudiments of the care to be observed and of the relation held by the citizen to the railroad when going across a public crossing, we think are recognized by all the decisions when speaking upon this question, and are necessarily inherent in every such case unless, as we have said above, the citizen, when crossing a railway track upon a public crossing, must take into consideration that a law limiting speed to six miles, per hour will be violated by the railroad and the train run from six to eight times as fast as the law allows. And also take into consideration that a law requiring the railroad to ring the bell on the engine eighty rods from the crossing and to continue to ring the bell until the engine crosses the highway, will also be disregarded. (2) This statute has been construed by this court to mean that when the plaintiff shows that the party whose injury or death on a crossing is the cause of action, and that the railroad failed to observe the requirements of the statute in failing to ring the bell,

then a prima facie case is made for the plaintiff. Huckshold v. Railroad, 90 Mo. 555. Contributory negligence, however, under the statute remains a defense which the railroad may establish. (3) Here, then, in considering the question of the care of the deceased, we have two safeguards of the law which she had a right to rely upon in determining her course; she had the clear right in regulating her own movements to rely upon the railroad in moving its engines and cars not to violate the law and run six or eight times as fast as allowed to run. She had also as a guide for her movement and action the fact that a train approaching the crossing was bound to sound the bell eighty rods from the crossing, and to continue sounding it until the engine crossed the crossing. This court has very often and very recently held this healthy and reasonable rule. Hutchinson v. Railroad, 161 Mo. 254; Weller v. Railroad, 164 Mo. 199; Riska v. Railroad, 180 Mo. 190; Johnson v. Railroad, 77 Mo. 546; Petty v. Railroad, 88 Mo. 318; Jennings v. Railroad, 112 Mo. 276. (4) When the court sits in judgment on this issue, it takes cognizance of each fact and circumstance in evidence, and in addition thereto presumes, in favor of the deceased, that she, with the instinct of self-preservation alert, which the evidence shows was true, did not negligently expose her life. Buesching v. Gaslight Co., 73 Mo. 233; Petty v. Railroad, 88 Mo. 320; Bluedorn v. Railroad, 108 Mo. 448; Schlereth v. Railroad, 115 Mo. 100; Meadows v. Ins. Co., 129 Mo. 93; Weller v. Railroad, 164 Mo. 199. (5) The court will also, in passing upon the act of deceased and in considering her surroundings, give weight to the fact that she had a right to rely upon the railroad obeying the ordinance limiting the speed of the engine to six miles an hour. If this had been done, there is no question but her action in crossing the street would have been safe, and if the bell had been constantly rung, as required by the statute, she would have had timely notice of the ap-

proaching engine, and its proximity to the crossing would have been indicated at each sound of the bell, thus giving what the statute intended to be, a constantly approaching safety signal to warn citizens. This court has repeatedly held that the citizen has a right to rely upon such laws. That is, in regulating their action they have a right to do so, with the expectation that the railroad will obey such laws. Hutchinson v. Railroad, 161 Mo. 254; Weller v. Railroad, 164 Mo. 199.

VALLIANT, J.—Plaintiff's wife was killed by being run over by a locomotive on defendant's road in the city of Pacific; this suit was brought to recover $5,000 damages under the provisions of section 2865, Revised Statutes 1899; the trial resulted in a verdict and judgment for plaintiff for that amount, and defendant has appealed.

The petition charges that the locomotive was negligently run at a high and excessive rate of speed; that the bell was not rung or kept ringing as the statute requires, and the locomotive was run in excess of six miles an hour in violation of an ordinance of the city.

The answer was a general denial and a plea of contributory negligence,— reply, general denial.

The testimony for plaintiff tended to show as follows: An ordinance of the city prohibiting the running of locomotives or trains through or within the city limits at a rate of speed in excess of six miles an hour. Defendant's railroad tracks run east and west through the city. There is a main track, one side track north of the main track, and two or more side tracks south of it; we are concerned only with the main track and the side track north of it. Between these two tracks was a space eight feet wide. First street runs north and south, crossing the tracks at right angles. There is a sidewalk on each side of the street. A freight train had just come in from the west, headed east, and stop-

ped on this north side track, with the point of the en-
gine at or perhaps a little over the west line of the west
sidewalk; it stood there puffing or making the noise
usual from engines just brought to a stop with steam
on.

The plaintiff's wife with a party of friends ap-
proached from the north on First street, walking south
toward the railroad tracks aiming to cross to the south
side of the tracks. Something detained the plaintiff's
wife a moment on the north side, while the rest of the
party walked on across the tracks to the south side.
The plaintiff's wife resumed her course walking along
the west side of First street until she came near the
front of the engine of the freight train, then she passed
over to the east sidewalk, then on south, crossing the
side track on which the freight train was standing,
crossing the eight-foot space between the tracks, step-
ped with one foot on the main track and in that instant
a locomotive coming east on the main track struck her
and killed her. Her body fell on the north side of the
track.

The engine which struck the plaintiff's wife was
what they called a helper, its use being to help trains
over a grade just west of Pacific; it had at this time
no cars attached to it and was being run backward,
that is, tender in front. It came without ringing the
bell and at a rate of speed of which the plaintiff's sev-
eral witnesses gave various estimates, ranging from
fifteen to forty miles an hour. Looking west from the
crossing at First street, the main track was straight
for three hundred yards and there was nothing in the
way to obstruct the west view of one standing in the
eight-foot space between the tracks. So far as the wit-
nesses could discern, the deceased after passing the
front of the freight train continued onward until she
stepped upon the main track without pausing and with-
out turning her head to look in either direction, keeping
her face straight to the south; some of the plaintiff's

witnesses said she was running, others that she was walking fast, all said she was looking straight south and going fast.

At the close of the plaintiff's case defendant asked an instruction in the nature of a demurrer to the evidence which was refused and exception taken.

The defendant's evidence was to the effect that the engine was running only six or seven miles an hour and that the bell was ringing all the while. In other respects it was not materially different from that of plaintiff. At the close of all the evidence the defendant again asked an instruction in the nature of a demurrer to the evidence which was also refused and exception taken.

The demurrer to the evidence should have been sustained. Conceding that the engine was going at an unlawful rate of speed, and that the bell was not ringing and therefore that defendant was negligent, still the defendant was not liable if there was negligence of the deceased which directly contributed to the accident. The testimony shows that the situation was such that if the deceased, after passing the freight engine and before stepping on the main track, had looked she would have seen the helper engine coming and could have paused in a place of safety until it passed, but that she did not look and went on to her death.

Counsel for respondent think that one of the witnesses testified that she did stop and look, but that is a mistake; the witness said that she stopped ten, twelve, or fifteen feet from the crossing, alluding probably to a stop before passing in front of the freight engine. Twelve or fifteen feet would have placed her north of the freight engine, and ten feet would have located her in front of it; her view of the main track to the west came only after she had passed into the eight-foot space between the tracks.

It is argued, also, by plaintiff's counsel that without pausing and without turning her face to the west

she could by simply turning her eyes have seen the engine coming for a distance of two hundred or three hundred feet, and that, recognizing as we should the natural law of self-preservation, she should be presumed to have done so. Taking that assumed fact for a foundation, the learned counsel for plaintiff build upon it the argument that seeing the engine at least two hundred or three hundred feet away she trusted that the men in charge of it were obeying the ordinance and running not faster than six miles an hour and therefore calculated that she could cross the main track before the engine reached her.

In making that argument the counsel must be presumed to have abandoned the plaintiff's position in so far as it rested on negligence in failing to ring the bell, because the only purpose of the law in requiring the bell to be rung is to attract attention, but if she saw the engine coming, as plaintiff's counsel contend she did, she needed no bell to attract her attention.

The theory on which this argument rests for a foundation is itself founded on a debatable proposition. The distance one may see by a side glance without turning his face varies according to the angle at which the glance is given. Whether one standing within two, four or six feet of the main track could by such a glance have seen this engine two hundred feet away is a question that men might differ about. But that one could have seen it twice that distance by turning his head is certain.

The evidence was that deceased had made but one step on the track when the engine struck her. Miss Alice Dailey, who was the principal witness for the plaintiff, and a very intelligent one, said that the deceased had only one foot across the rail when she was struck. The witnesses all said that she was going fast and looking straight ahead. Under this evidence, therefore, it is mere conjecture to say that she gave a

side glance to the right and saw the engine two hundred feet away or that she saw it at all.

The plaintiff's testimony as to the speed the engine was going was all that of non-expert witnesses, and their inaccuracy is shown by the variety of their estimates, from fifteen to forty miles an hour.

Whatever was apparent to them as to the speed of the engine was as apparent to the deceased if, as is contended, she looked and saw it. Her friend, Miss Dailey, and her brother-in-law, Mr. Busch, who were of her party and who had passed safely over the crossing before her, turned around in anxiety for her safety and were looking towards her. Mr. Busch ran towards her. They saw and realized her danger and what they saw and realized she would have seen and realized if she had looked before stepping on the track. They probably saw the on-coming engine before she could have seen it, because they had reached the south side of the track while her view was obstructed by the freight train, but after she had passed the front of the freight engine and had come into the eight-foot space between the two tracks she had as clear a view as her friends had and was as capable of judging the speed of the engine as they were,—but she failed to look.

The facts in this case are very different from those in Hutchinson v. Railroad, 161 Mo. 246, to which we are referred. In that case it was after dark in the evening, the deceased heard the whistle and saw the headlight of the engine about half a mile distant when she started across the tracks; if the engine had been running within the six-mile-speed limit she would have had ample time to cross, even pausing as she did to pick up a scarf she had dropped. The court held that, in the absence of proof that she knew or had reason to apprehend to the contrary, she had a right to presume that the engineer was observing the ordinance and to regulate her movements accordingly. But the accident we are now discussing did not occur at night; it oc-

curred at nine o'clock in the morning, and the plaintiff's witnesses say that they saw that the engine was running at a high rate of speed. There was not one of them shown to be more competent to judge of the speed than the deceased; the only difference in that respect between them and her was that they looked and she did not. If one sees or has reason to believe that the engine is running in violation of the speed ordinance he has no right to risk his life on a presumption that the ordinance is being observed. There is in this case no ground on which to construct a rational presumption that the deceased trusted that the engineer was obeying the ordinance. There is no evidence on which we can base a finding that she saw the engine at all until in the moment of peril. It was imminently dangerously close when she stepped on the track. All the eyewitnesses say she was coming fast, she put her foot over the rail and in that instant the engine struck her. She was probably in a hurry to overtake her friends who had gone on ahead and she was possibly in a state of nervous excitement at having to pass so close to the front of the throbbing freight engine, but however that may be, and whatsoever the cause, she forgot to look at the danger into which she was running.

Plaintiff's case rests on two propositions: first, that the deceased saw the engine coming and trusted that it was running within the limits of the speed ordinance; second, that she did not see it coming and trusted that none was coming because she heard no bell. The plaintiff may choose which of these two positions he will take, but he cannot take both, because they are inconsistent; the proof of one disproves the other. If the deceased saw the engine coming she did not suffer from failure to ring the bell, if she did not see it there was no occasion for her to take the speed ordinance into account in regulating her movements.

The plaintiff's position in regard to the failure to give the statutory signal is that when he proves that the

bell was not rung and that the accident occurred, he makes out a *prima facie* case and the burden is shifted on the defendant to show that the failure to give the signal was not the cause of the accident.

The statute requiring the signal by bell or whistle was the same prior to 1881 that it is now except in its last clause, which then was in these words: ''and said corporation shall also be liable for all damages which shall be sustained by any person by reason of such neglect. '' [Sec. 806, R. S. 1879.] But in 1881 the section was amended by striking out these words and inserting in lieu of them these words: ''and said corporation shall also be liable for all damages hereafter sustained at such crossing when such bell shall not be rung or such whistle sounded as required by this section, provided, however, that nothing herein contained shall preclude the corporation sued from showing that the failure to ring such bell or sound such whistle was not the cause of such injury'' (Laws 1881, p. 79); and in that form the statute appears in our present revision (sec. 1102, R. S. 1899).

The purpose of that amendment was, as is rightly contended by the plaintiff's counsel, to make the proof of the accident and the proof of failure to give the required signal sufficient for a *prima facie* case and to throw the burden of proving that the accident was not the result of the failure to give the signal on the defendant. It was so decided in Huckshold v. Railroad, 90 Mo. 548. Therefore, if the only evidence in this case was proof of the accident and proof that the bell was not rung there would have been, according to the terms of the statute, a prima facie case, leaving the burden of proving facts to show non-liability on the defendant.

But where the plaintiff in proving the accident proves also that it was not caused by the failure to give the signal, or that the person injured was guilty of negligence that directly contributed to the result, there

is left nothing for the defendant to prove. That is this case.

There are other points presented in the briefs but as what is above said disposes of the case there is no use of further discussion. The judgment is reversed. All concur.