FRANK H. FARRIS, Administrator of the Estate of J. H. CALVIN, Deceased, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, December 23, 1912.

1. RAILROADS: Traveller Crossing Track: Duty to Look and Listen: Contributory Negligence. The duty to look and listen for an approaching train before attempting to cross a railroad track is absolute and the failure to do so when there is opportunity therefor is want of ordinary care as a matter of law.

2. ———: ———: ———: ———. A traveller about to cross a railroad track is deemed to have seen and heard what was plainly to be seen and heard and where he has the opportunity

Farris v. Railroad.

before crossing over the track to have seen or heard the train in time to avoid its striking him, if he had used ordinary care in looking, then, under the law, he will be deemed to have seen and heard the train although there was no testimony that he did see it.

3. ——: ——: ——: ——: Obstructed View. The very fact that the view of the main track was obstructed to the traveller until he had passed a box car on a side track and was about six feet from the main track on which the train was running, made it all the more necessary for him, when he did reach that point where he could see the train approaching, to look for it before attempting to pass over the track.

4. ——: Killing Person at Crossing: Failure to Give Signals: Prima Facie Case: Contributory Negligence. As a general rule, a prima facie case is made against a defendant railroad when it is shown that plaintiff's decedent was killed at a public crossing, by a train colliding with him and that the statutory signals were not given, and the burden of proving non-liability is then shifted to the defendant, but when, from the plaintiff's own evidence, it appears that the injured person was guilty of negligence, there is nothing left for the defendant to prove.

5. ——: ——: ——: Perilous Position: Contributory Negligence. When a traveler upon a highway, without fault on his part, is placed in a position of imminent peril at a railroad crossing, the law will not hold him guilty of negligence, though he did not select the safest course; and this rule is especially applicable where the person was placed in such perilous position by the railroad company's negligence, as in failing to give proper signals; but this rule can not be invoked in the case of the killing of a pedestrian who could have seen the approaching train when he was within six feet of the main track and could have stepped back until it had passed.

6. ——: ——: Contributory Negligence: Assuming that Train Will Stop at Station. Even though a pedestrian knows that a certain train is due to stop at a certain time and he sees a train coming at such time, he cannot assume that it is the regular train and will stop at the station, but must watch the movements and ascertain for himself whether it is the expected train before attempting to cross the track in front of it.

Appeal from Crawford Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED.

*W. F. Evans, Mann, Todd & Mann* for appellant.

(1) There being a clear space as deceased approached defendant's main track where he was struck and killed, and after he passed the obstruction of the granary and car standing on the sidetrack and before he entered upon the main track from which he could see, had he looked, the approaching train for a distance something like nine hundred feet, as disclosed by the evidence, he was guilty of such contributory negligence in going upon the track immediately in front of the approaching train as bars recovery, and defendant's instruction should have been given. Green v. Railroad, 192 Mo. 131; Giardina v. Railroad, 185 Mo. 330; Boyd v. Railroad, 105 Mo. 371; Kelsey v. Railroad, 129 Mo. 362; Moore v. Railroad, 176 Mo. 528; Carrier v. Railroad, 175 Mo. 470; Guyer v. Railroad, 174 Mo. 344; Van Bach v. Railroad, 171 Mo. 338; Sharp v. Railroad, 161 Mo. 214; Hayden v. Railroad, 124 Mo. 566; Tanner v. Railroad, 161 Mo. 497. (2) This is true although the defendant's train may have been running at an excessive rate of speed, or otherwise negligently operated. Moore v. Railroad, 176 Mo. 528; Van Bach v. Railroad, 171 Mo. 338; Kries v. Railroad, 148 Mo. 328; Weller v. Railroad, 120 Mo. 635; Green v. Railroad, 192 Mo. 131; Palmer v. Railroad, 142 Mo. App. 440; Laun v. Railroad, 216 Mo. 563; Gumm v. Railroad, 141 Mo. App. 306. (3) Nor does the fact that train No. 6, which struck and killed the deceased, was running through the station of Moselle at a high rate of speed, and without stopping or slackening up to stop, upon the exact time of train No. 14, which was scheduled to stop and always did stop at the station of Moselle, and on that account approached the station more slowly, excuse the deceased from the charge of such contributory negligence as bars a recovery. Moody v. Railroad, 68 Mo. 470; Boyd v. Railroad, 105 Mo. 371.

*Frank H. Farris* and *C. C. Bland* for respondent.

(1) The plaintiff makes out a prima facie case on the subject of listening where the evidence shows no bell was rung or whistle sounded as the train approached the crossing, and then the burden of nonliability shifts to the defendant. Weigman v. Railroad, 223 Mo. 699; Busching v. Gas Light Co., 73 Mo. 231; Toohey v. Fruin, 96 Mo. 109; Gannon v. Gas Co., 145 Mo. 516; Crumpley v. Railroad, 111 Mo. 152; Green v. Railroad, 192 Mo. 131. (2) An act done by a railroad passenger in the face of impending peril caused by the company's negligence in order to avoid injury, is not contributory negligence, as a matter of law, though it in fact contributes to the injury, and the rule is the same in case of negligent accidents generally, where the peril of the injured person is created by another's fault, and the injured person is rightfully where he is. Garret v. Railroad, 159 Mo. App. 64. (3) One is not chargeable with negligence when exposed to sudden danger, if he does not adopt the safest and best course to avoid injury. Whether the course adopted by him to free himself from the peril in which he was involved by the approaching train was such as a man of ordinary prudence might or would have adopted was a question for the jury. Byars v. Railroad, 161 Mo. App. 706; Palmer v. Railroad, 142 Mo. App. 646; Shanahan v. Transit Co., 109 Mo. App. 231; Donohue v. Railroad, 91 Mo. 357.

GRAY, J.—This is an action by the plaintiff, administrator of the estate of J. H. Calvin, deceased, to recover damages for his death alleged to have been caused by defendant's negligence. The answer denied negligence on defendant's part, and alleged that Calvin's death was due to, and was the direct result of, his own negligence. The issues were submitted to a jury, and a verdict for $2000 returned.

It is conceded that Calvin was killed by being struck by a passenger train of defendant at a crossing in the village of Moselle, this State, on the 29th day of March, 1911. Moselle has a population of about 250. Defendant's track runs from the Southwest to the northeast through the village. The depot is situated on the north side of the track. At a point about 120 feet east of the depot is a public crossing. The railroad track divides the village, and residences and business houses are situated on either side of the track, and there is, at a point about fifty feet east of the depot, a crossing for footmen which had been used as such for a long time prior to the death of the deceased. At a point a few feet northeast of this crossing, a sidetrack left the main line and extended parallel therewith by the station to the southwest, and at a point where the footpath crossed the track the south rail of the main track was about six feet from the north rail of the sidetrack. At a point southeast of the depot and just south of the sidetrack there was a granary, and on the sidetrack opposite the granary and just to the southwest of the footpath, were two box cars. The east end of the east car was a few feet northeast of the east end of the granary and about twenty feet southwest of the footpath at the point where the same crossed the tracks.

The defendant had two east-bound morning passenger trains, each of which had a fixed schedule of time. Train No. 6 was a fast train, due at six o'clock a. m. and did not stop at Moselle. Train No. 14 was due to arrive at 7:39 a. m. and was a local train, always stopping at Moselle. No. 6 was late and arrived at Moselle on the time of No. 14.

The evidence discloses that the deceased, who had been in and about the village for several months, started to cross from a saloon on the south side of the village to the north side, by way of the footpath,

and as he was passing over the main track, was struck by the fast east-bound No. 6 and killed.

The evidence further discloses that several people were at the station, waiting to become passengers on No. 14, when No. 6 passed through without stopping, and at a rate of about sixty miles an hour. There is a sharp conflict in the record as to whether the signals were given for the station and the crossing. The plaintiff's witnesses testified that signals were not given, and the defendant's witnesses, that they were. The verdict of the jury settled this question in favor of plaintiff.

The petition alleged that the distance between the sidetrack and the main track was eight feet, and all the witnesses practically agreed that at the northeast corner of the east box car the distance was seven feet and eight inches, and at the path, about six feet. The witnesses also agreed that when the deceased had reached a point where his view was no longer obstructed by the east end of the box car, he could have seen, had he looked, the approaching train for some distance down the track. This distance had been measured by one witness for the plaintiff, and two for the defendant, and they agreed that it was from 1400 to 1500 feet. Other witnesses testified that it was about a quarter of a mile. One witness for the plaintiff, however, testified he had never measured it, but he thought the track was straight for about six hundred feet, and that a train could have been seen coming that distance at least. There was other testimony that the train could have been seen beyond the point where the curve commenced in the track. It can hardly be said there is any conflict on this point, as the witness who testified the track was straight for six hundred feet said he was only approximating it, and it might have been straight for a greater distance, and did not undertake to say a train could not have been seen at a greater distance than six hundred feet.

The evidence showed that the side of the box car extended two feet north of the south rail of the side-track, and this distance deducted from the distance between the rails left a space of five feet and eight inches between the northeast corner of the box car and the south rail of the main track.

In determining the distance the deceased was from the main track when he could have seen the approaching train, the distance the sidetrack was from the main track at the point where the path crossed the same is immaterial. The issue would be the same if the sidetrack had not extended east of the box cars at all. The deceased could have seen the approaching train when his vision was no longer obstructed by the box car, and as heretofore stated, the witnesses agreed that this was when he was at least five feet and eight inches from the main track, and that the train would have remained in full view from the time when it first could have been seen until it had crossed the path. It is upon this proof that the appellant claims the court should have given its demurrer to the evidence.

The duty to look and listen for an approaching train before attempting to cross a railroad track, is absolute, and the failure to do so when there is opportunity therefor, is want of ordinary care as a matter of law. [Burge v. Railroad, 148 S. W. 925; Green v. Ry., 192 Mo. 131, 90 S. W. 805.]

This duty to look and listen before attempting to cross the track, includes the obligation to see and hear a train, and where the undisputed evidence shows that the deceased, by looking, had an opportunity to see the approaching train before the time of the accident, and that his opportunity was such that he could not have failed to have seen or heard the train in time to avoid the injury, if he had used ordinary care in looking, then under the law he will be deemed to have seen and heard the train, although there was no testimony that he did see it. Under such circumstances, the

Farris v. Railroad.

traveler is deemed to have seen what was plainly to be seen. This doctrine is applied in cases where it was daylight, and the engine or train in plain view, and could unquestionably have been seen if the traveler had looked in the direction from whence it came. This rule is particularly applicable to persons traveling on foot, ''since the danger-zone in such a case is so narrow and it may be avoided with so little effort.''

Granting that on account of the obstructions the deceased could not have seen the approaching train from the time he left the saloon until he had reached the northeast corner of the box car, it does not help the plaintiff's case. On the contrary, the very fact that the view was obstructed until he reached this point, made it all the more necessary for him, when he had reached that point, to look for the approaching train before attempting to pass over the track. [Philadelphia B. & W. R. Co. v. Buchanan, 78 Atl. 776; L. & N. R. Co. v. Gardner's Admr., 131 S. W. 787; Coleman v. Atlantic Coast L. R. Co., 69 S. E. 251; Elliott v. Railroad, 80 Atl. 283; Beech v. Railway, 116 Pac. 213; Wise v. Railroad, 80 Atl. 459.]

The respondent claims that he made a prima facie case when he showed that the deceased was killed at a public crossing by a train colliding with him, and that the statutory signals were not given, and the burden of proving nonliability was then shifted to the defendant. This is the general rule, but when the plaintiff's own testimony shows that the injured person was guilty of negligence that directly contributed to the result, there is nothing left for the defendant to prove. [Green v. Railroad, 192 Mo. 131, 90 S. W. 805.] In other words, the rule is, that where the plaintiff, in making out his case, shows that he went upon the track without seeing the train when he could have seen it by looking, he thereby overcomes and destroys his own prima facie case made by the showing of the failure to give the signals and the collision.

It is next claimed by the respondent that the deceased could not see the approaching train until he had reached the danger point, and that he passed to the danger point because the defendant failed to give any signal of the approaching train, and had the signal been given, the deceased would have stopped before he got so close to the track as to be in a place of danger, and that he was killed while attempting to escape.

When a traveler upon a highway, without fault on his part, is placed in a position of imminent peril, at a railroad crossing, the law will not hold him guilty of negligence, though he did not select the safest course; and this rule is especially applicable where the person was placed in such perilous position by the railroad company's negligence, as in failing to give proper signals. [Dickinson v. Railroad Co., 81 Atl. 104, 37 L. R. A. (N. S.) 150.]

Do the facts justify the respondent in invoking this rule? We think not. The east end of the box car was west of the path, and therefore, there was nothing for at least thirty feet south of the main track, and all the deceased had to do when he arrived within six feet of the main track, was to look to the southwest and he would have seen the approaching train, and could have stepped back until it had passed.

It is next claimed that the fast train came through on the time of the local train, and that the deceased was justified in believing it was the local train, and would stop at the station, and, therefore, he would have plenty of time to pass over the track ahead of it. In the first place there is no evidence that the deceased believed the approaching train was the local, or slow train, or that he did not know the fast train had not passed. In fact, it is not even alleged in the petition that he relied on any such fact. But waiving all pleading and proof, the point must be decided against the respondent as a matter of law.

In Boyd v. Railway Co., 105 Mo. 371, 16 S. W. 909, the deceased, husband of plaintiff was a hotel keeper in the town of Renick. His hotel was situated about one hundred feet from the depot, and the tracks of the defendant were between the hotel and the depot. The deceased in the prosecution of his business, was in the habit of going to the depot upon the incoming of all passengers stopping at the station. One of the defendant's regular trains was due at 12:30 p. m. On the day plaintiff's husband was killed, an excursion train approached the station on the time of the other train, and was running about forty or forty-five miles an hour. When the deceased heard the train he immediately came out of the hotel and started to the depot and entered upon the track immediately in front of the approaching engine, and was killed. In passing on the case, the Supreme Court said: "The train was in plain view. That he both heard the train and saw it, in a general way, there is no question; but he did not stop a moment in his course to observe its movement, to ascertain whether it was the regular train he was expecting, and which would stop at the depot, and whose speed as it slowed up for that purpose he could accurately gauge from his long and frequent experience, or, as it proved to be, a special going at a high rate of speed and showing no evidence of an intention to stop; dominated perhaps by the first impression received in the house when he heard the whistle, that this was the regular mail, he hastened towards the depot and onto the track without stopping for a moment to test by sense of sight or sound the correctness of his first impression, and as the result of his heedlessness lost his life."

This decision is controlling on us, and undoubtedly holds that the pedestrian, even though he knows that a certain train is due to stop at a station at a certain time, and he sees a train coming at such time,

167 Mo. App.—26

he cannot assume that it is the regular train and will stop, but must watch its movements and ascertain for himself whether it is the expected train.

In Moody v. Railroad, 68 Mo. 470, the plaintiff's husband was postmaster at Webtser, and was in the habit of delivering the mail to a certain passenger train. His postoffice was on the opposite side of the railroad to that where the depot was, and from which the mail bags had to be delivered to the train. On the night of the accident he heard a train about the time the mail train was expected and usually passed, and he picked up his mail bags, saw the approaching train, but supposing it would stop, attempted to cross over in front of the locomotive and was killed. There was much testimony that the statutory signals were not given. In passing on the case Judge NAPTON said: "As to ringing the bell or sounding the whistle, it was clearly of no importance, so far as Moody was concerned, since it is conceded that he heard and saw the train and was simply misled by supposing it was the mail train; and the only question is, who is to be responsible for the mistake and his recklessness in determining to cross over in front of the cars, which he could see were going at a rapid rate. Our opinion is, that the instruction asked by the defendant, applicable as it was to the facts in evidence, should have been given."

It makes no difference in the Moody and Boyd cases, that the deceased actually saw the train coming, and that there is no evidence in the present case that Calvin did see the train, as all the evidence shows that Calvin could have seen the train had he looked, and therefore, the law says he did see it.

The case is very similar to Giardina v. Railroad, 185 Mo. 330, 84 S. W. 928. In that case the defendant had a double track street railroad in the city of St. Louis. An east-bound car had stopped at a street crossing to receive passengers. While the car was

thus standing, the plaintiff came running to deliver a
key to a person on the car. The car was on the south
track, and the plaintiff came to the rear end of the car
and delivered the key, then turned to go back across
the north track, and as he did so, he was struck by a
west-bound car on that track and received his injuries.
The plaintiff testified that he knew it was the custom
of the company to have the motorman of a car which
was approaching a car that had stopped, to sound his
gong and go slowly, and knowing this custom, he, be-
fore attempting to cross the north track, paused be-
hind the east-bound car and listened, but hearing no
gong, concluded there was no car coming. The evi-
dence showed that with the east-bound car out of the
way, the plaintiff could have seen the car on the north
track for one thousand feet. In passing on the case,
Judge VALLIANT said: "It may be conceded that the
defendant was negligent in running its car at a high
rate of speed and without sounding the gong past a
standing car from the rear of which the motorman
ought to have known that people were liable to pass.
It is not likely that the peremptory instruction was
given on the theory that no negligence of the defend-
ant was shown, but rather, that the plaintiff failed to
observe that degree of care that was to be expected
of a man of ordinary prudence. . . . From where
he stood the body of the east-bound car shut off his
view to the east, but one who was as familiar with the
movements of the cars as he said he was, in fact, any
man of common experience in the plaintiff's place,
should have known that in a moment the eastbound
car would have gone and the obstruction to his vision
would have been removed. But even if he had not had
that moment to spare he could have leaned forward
beyond the line of the standing car in perfect safety
and have seen the west-bound car coming. The meas-
ured distance between the tracks was six feet ten
inches. . . . His act in stepping on or near the

north track without looking for the west-bound car was negligence and it contributed to cause the accident."

If we adopt the theory that the deceased knew the time of the trains, and saw the approaching train, but believed it was the local or slow train and relied on its stopping and tried to pass in front of it, then we have nothing to do but to follow the Boyd and Moody cases, and hold that the defendant is not liable for his mistake. And on the other hand, if we proceed on the theory that he had no such knowledge, then he passed from a point of safety to danger without looking to see an approaching train that he could have seen had he looked, and our judgment is controlled by a long line of decisions of the Supreme Court holding in such case defendant is not liable.

The judgment is reversed. All concur.