MARY T. HOLTKAMP, Respondent, v. CHICAGO BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed November 8, 1921.

1. **RAILROADS: Crossing Accident: Contributory Negligence: Duty to Look and Listen: Rule Stated.** A person who goes upon a railroad crossing must exercise ordinary care for his own safety and act with ordinary prudence to ascertain whether a train is approaching to avoid injury, and a failure to discharge this duty is negligence as a matter of law.

2. ———: ———: ———: ———: **Not Abrogated by Ordinance.** The negligence of defendant's engineer in running a train at a rate of speed in excess of that prescribed by a city ordinance, did not absolve deceased from the duty of exercising ordinary prudence for his own safety before he undertook to cross a railroad track, and where he failed to take the precaution to look

and listen before venturing upon the track, as it was his duty to do, when by so doing he could have seen the train and stopped his truck until the train passed, and the accident would have been avoided, *held* his own contributory negligence was the proximate cause of his death.

3. ———: ———: ———: ———: **Failure to Look and Listen: Negligence Barring Recovery.** The duty of the deceased to look for an approaching train was not performed by looking only from a point 330 feet from the danger point, and at which point his view was somewhat obstructed; neither did he have the right to put full reliance upon the obligation of the engineer to observe the speed ordinance, and himself fail to exercise ordinary care for his own safety, and where he either did not look, or if he looked, he heeded not what he saw and carelessly, attempted to beat the train across the track, he was guilty of contributory negligence precluding his right to recover.

Appeal from the Hannibal Court of Common Pleas of Marion County.—*Hon. William T. Ragland,* Judge.

REVERSED.

*H. J. Nelson, George A. Mahan* and *Dulany Mahan* for appellant.

(1)   The demurrer to the evidence should have been sustained because Henry T. Holtkamp deliberately drove his automobile truck diagonally upon the tracks of the defendant company immediately in front of an oncoming engine and train of cars when all of plaintiff's evidence shows that he had an unobstructed and uninterrupted view of defendant's tracks to the westward ,the direction from which the train was approaching for a distance of from 800 to 1314 feet.   Laun v. St. Louis & San Francisco R. R. Co., 216 Mo. 563; Green v. Missouri Pacific R. R. Co., 192 Mo. 131; Pope v. Wabash R. R. Co., 242 Mo. 232.   Plaintiff deceased was guilty of contributory negligence that would bar his recovery in this case.   Col lett v. Kuhlman, 243 Mo. 591; Reeves v. Kansas City, St. Louis & Chicago R. R. Co., 251 Mo. 169.   Although defendant's train was running faster than the

speed ordinance permitted, yet deceased moved from a place of safety to a place of danger on defendant's track so close before the engine that the same could not be stopped in time to avoid hitting him. Deceased was guilty of contributory negligence and his concurrent negligence operates as a complete defense and exonerates defendant from liability. Burnett v. Railroad, 172 Mo. App. 51; Keele v. Railroad, 258 Mo. 78; Laun v. Railroad, 216 Mo. 563; Stotler v. Railroad, 204 Mo. 634; Rollison v. Railroad, 252 Mo. 538; McGee v. Railroad, 214 Mo. 547; Watson v. Railroad, 133 Mo. 251; Dyrez v. Railroad, 238 Mo. 47; Green v. Railroad, 192 Mo. 142; Holland v. Railroad, 210 Mo. 350; Schmidt v. Railroad, 191 Mo. 229, 232; Batesell v. Smelting Co., 276 Mo. 214; Huggart v. Railroda, 134 Mo. 679. (2) Plaintiff's instruction No. 2 was erroneous and should not have been given for the reason that it does not cover plaintiff's case and does not require the jury to find upon all facts necessary to a verdict for plaintiff.

*Eby & Hulse* and *Berryman Henwood* for respondent.

(1) The demurrer to the evidence was properly overruled by the trial court. Strauchon v. Met. Ry. Co., 232 Mo. 587; Lueders v. Railroad, 253 Mo. 97; Powers v. Railroad, 202 Mo. 267; Riska v. Railroad, 180 Mo. 168; Campbell v. Railroad, 175 Mo. 161; Woodward v. Railroad, 152 Mo. App. 469; Moore v. Railroad, 157 Mo. App. 53; Jackson v. Railroad, 171 Mo. App. 430; Murray v. Transit Co., 108 Mo. App. 501; Heintz v. Transit Co., 115 Mo. App. 667; Yoakum v. Railroad, 199 S. W. 263; Swigart v. Lusk, Receiver Railroad, 196 Mo. App. 471; Hanna v. Railroad, 178 Mo. App. 281; Underwood v. Railroad, 182 Mo. App. 252; Underwood v. Railroad, 190 Mo. App. 407. (2) It is conceded by appellant that at the time the train struck deceased at the crossing, and covering quite a distance before reaching said crossing, it was running from 18 to 35 miles per hour,

which was largely in excess of the speed permitted by the ordinance of the City of Hannibal. (a) These facts clearly made the issue of contributory negligence a jury question. Hanna v. Railroad, 178 Mo. App. 281; Davidson v. Railroad, 164 Mo. App. 701; Underwood v. Railroad, 182 Mo. App. 252; Strauchon v. Railroad, 232 Mo. 587; Authorities supra under point 1; Authorities, infra, under (b). (b) The attempt of deceased to cross in front of the train was an act of emergency which amounted at most to an error of judgment and not contributory negligence as a matter of law. Kleiber v. Railway, 107 Mo. 240; Donohue v. Railroad, 91 Mo. 357; Long v. Mo. Pac. Ry. Co., 115 Mo. App. 489; Feeny v. Wabash Railroad Co., 123 Mo. App. 420; Ransom v. Depot & Express Co's., 142 Mo. App. 361; Byars v. Railroad, 161 Mo. App. 698; Davidson v. Railroad, 164 Mo. App. 701; Jackson v. Railroad, 171 Mo. App. 430; Hanna v. Railroad, 178 Mo. App. 281; Underwood v. Railroad, 182 Mo. App. 252; Underwood v. Railroad, 190 Mo. App. 407; Swigart v. Lusk, Receiver Railroad, 196 Mo. App. 471. (c) Contributory negligence which will prevent recovery must be such negligence as to form the direct, producing and efficient cause of the casualty. There is no such negligence in the case at bar. Howard v. Scarritt Est. Co., 267 Mo. 402; Oates v. Railroad, 168 Mo. 548; Strauchon v. Met. St. Ry. Co., 232 Mo. 587.

BRUERE, C.—On the 3rd day of April, 1917, Henry T. Holtkamp, deceased, was struck and killed by defendant's train, at a public street crossing, in the City of Hannibal, Missouri; plaintiff, his widow, brought this action to recover damages under the provisions of the compensatory death act.

The trial resulted in a judgment for plaintiff for five thousand dollars from which defendant appealed.

The negligence charged in the petition is running said train at a rate of speed in excess of that provided by the city ordinance, to-wit, the rate of thirty miles per hour, while the ordinance provides a rate of six miles per hour.

The petition charges other grounds of negligence but these need not be considered here, for the reason that they were abandoned by plaintiff, the case being submitted solely upon defendant's negligence in running its train in excess of the ordinance speed.

The answer of the defendant was a general denial and a further plea that the death of the deceased was due solely to his negligence and carelessness in attempting to cross defendant's railroad track without looking or listening for the approach of trains on said track, when by looking he could have seen or listening he could have heard the approach of said train in time to have remained away from said track in a place of safety.

At the close of all the evidence in the case defendant interposed a demurrer to it which the court overruled, proper exceptions being taken at the time.

The sole question raised by the appeal is whether or not the trial court should have directed a verdict in favor of the defendant, on the ground that the deceased was guilty of contributory negligence precluding plaintiff's right to recover.

The question under consideration necessitates a review of the evidence given at the trial. The negligence of the defendant in running its train in excess of the ordinance speed was established by the evidence.

The evidence further tended to prove the following facts: The accident occurred on a bright day at three-thirty o'clock, on the afternoon of April 3, 1917, at the crossing of defendant's railroad track over Maple avenue in the City of Hannibal, Missouri. The defendant maintains four tracks on Collier street in said city. These tracks run east and west on and along Collier street. From fifteen to twenty trains pass said crossing each day. Maple, Ledford, Lemon and Draper are public streets in said city running north and south and intersect defendant's tracks. The east line of Ledford street is three hundred and fourteen feet west of the west line of Maple avenue. Lemon street is eight hundred and eighty-six feet west of Maple. Draper street is west of

Lemon and about thirteen hundred and twenty feet from Maple avenue. Arch street is the next street west of Draper and Lindell street is the next street west of Arch. Ledford street connects with Collier street at the south line of Collier and at an angle of about thirty degrees, the west line of Ledford street extended being the west line of Collier street. .Maple avenue at its intersection with Collier street does not extend south of Collier street. The traveled portion of Collier street is fifteen feet wide and is located immediately south of defendant's track and parallel therewith. The Bluff City Shoe Company building is located on the southwest corner of Maple avenue and Collier street and fronts on the south side of Collier street. The Hannibal Car Wheel Company is located on the northwest corner of Maple avenue and Collier street. There is mentioned in the record a shed. This shed is located about sixty feet west of the west line of Ledford street and about seven feet south of the continuation of the south line of Collier street. There is another shed located just west of Lemon street. This shed, according to the plat introduced in evidence, is six feet high and about ten feet square. The railroad track runs straight and level from Maple avenue westwardly to a point west of Lemon street, a distance of over nine hundred feet.

The deceased at the time of the accident was driving a delivery truck for the Fletcher Tea Company of Hannibal. He was working for said concern in the capacity of delivery man, and had been so employed for four or five months just prior to his death. He was familiar with the railroad crossing over Maple avenue, as his work called him over the same about once every two weeks. The truck which deceased was driving was a Ford truck, with a covered body, with two glasses in the rear and glasses on each side opposite the seat; the chauffeur seat was located on the left hand side. .

On the day of the accident the deceased drove northeast on Ledford street to the intersection of Collier and Ledford streets and then drove east along Collier street, and south of and parallel with defendant's railroad

tracks, a distance of three hundred and thirty feet to the intersection of Maple avenue and Collier street. He then turned north on Maple avenue and proceeded to drive across defendant's south or main track, in front of an oncoming eastbound passenger train running on said track, and was struck and killed. After striking the deceased the train, consisting of an engine and seven coaches, was stopped with the east coach standing slightly west of Maple avenue crossing.

B. F. Smiley, a civil engineer, and a witness for plaintiff, testified that he made personal observations of the surrounding property and premises at the point on the traveled way where Ledford street comes into Collier street, twenty feet south of the south rail of defendant's main line, and that standing at said point he could see a train approaching from the west on said track a distance of three hundred feet; and that as he got closer to the track his view increased rapidly until he could see to Draper street a distance of over one thousand feet. He further testified that after a traveler turned from Ledford street east on to Collier street there was nothing to obstruct the traveler's view of the railroad tracks to the west as far as Draper street or farther.

Mr. Fletcher, another witness for plaintiff, testified that he made some observations, at a point in the center of Ledford street and on the south line of Collier street and that from that point a person seated in a truck, similar to the one in which the deceased was riding, could see a train approaching from the west on defendant's tracks a distance of three hundred feet. The witness further testified that seated in said truck at the point indicated he had an unobstructed view of defendant's track looking west to a point just past Lemon street. The witness stated that he estimated the distance between Ledford street and Lemon street to be three hundred feet. The distance, according to the map, from the point indicated to Lemon street is five hundred and fifty feet. Witness said he made similar observations after turning his car east on Collier street and that from that

point he had an uninterrupted view and could see defendant's track through the back glass of the truck a distance of seven hundred or eight hundred feet; that looking from a point on Collier street in front of the Bluff City Shoe Factory he could see defendant's tracks past Lemon street, between Arch and Lemon; that just after the accident he found deceased lying about ninety feet east of the Maple avenue crossing and about fifteen feet north of the main or south track and a little south of the truck.

Charles E. Medcalf, on behalf of the plaintiff, testified that at the time of the accident he was standing about one hundred and twenty-five feet east of Maple avenue crossing and about seven or eight feet north of the main track; that he was talking to a friend when he heard a whistle close to the crossing and turned around and saw said truck just in the act of coming up on the track, turning, when the engine was about forty or fifty feet from the crossing; that the train struck the hind wheel of the truck and hurled it eighty or ninety feet east; that the deceased was thrown out of the truck and rolled fifteen or twenty feet beyond the truck and within twenty-five feet of where witness was standing; that when he first observed the train it was running twenty or twenty-five miles an hour.

Malcolm Jackson, a witness for plaintiff, testified that he was standing east of Maple avenue about fifteen feet north of the south track. He further testified as follows:

"Q. Tell the jury what you saw? A. Well, he started to the railroad, there was a train whistled for the—at the foundry there, and he run up over the railroad crossing there, kindy slowed up, as he got about half way of the railroad crossing why the train hit him

"Q. Now how close was the train down to Maple avenue crossing when you first saw it? A. It did not lack but little ways of being there.

"Q. About how many feet? A. Twenty or thirty feet, something like that.

"Q. Was it there when it whistled? A. Yes, sir.

"Q. Did you hear it whistle before that? A. Yes, it whistled up at the other crossing.

### Cross Examination

"Q. About how far up the track or up the road rather, was the automobile when you first saw it? A. well, getting little past the shoe factory there, about up there to that gap or that gate there, that fence.

"Q. How far in feet would you say that would be from the crossing up the road from Maple avenue? A. I judge about thirty feet.

"Q. And the train was some thirty or forty feet you say when you saw that? A. Yes, sir.

Court:

"Q. Did you see the train when you first saw the automobile? A. Yes, sir.

"Q. When you saw the automobile thirty feet from the crossing where was the train? A. Right at the wheel foundry there, and time he hit the railroad crossing, time he got about half way the railroad crossing the train was down to him." Witness further testified that the train was running thirty-five miles an hour.

Richard Roach, a witness for plaintiff, was following the deceased in an auto-truck at the time of the accident. Roach testified that he drove northeastwardly on Ledford and as he approached within twenty or thirty feet of Collier street he saw deceased driving the Fletcher truck east on Collier street, and at a point about one hundred and fifty or two hundred feet east of Ledford street; that just before he reached the point where Ledford intersects Collier street he heard the engine coming and looked west and saw the train approaching from the west about two hundred and fifty or three hundred feet back up the track; that he then drove east on Collier street and south of the railroad tracks about one hundred feet when the train passed him; that at that time the deceased was one hundred and fifty feet from Maple avenue crossing; that after the train passed him he drove

"twenty-five feet further and that is when Mr. Holtkamp run in front of the train and it struck him." He further testified that he heard the train whistle just before it hit the truck about forty feet west of the crossing. He estimated the speed of the train at twenty or twenty-five miles an hour.

Mr. Robinson testified, for the plaintiff, that he was standing sixty yards southeast of the crossing and first saw the train when it was fifteen or twenty feet from the crossing and saw the truck when it was moving right on the track; and that the train was running from twenty to twenty-five miles an hour.

Plaintiff introduced no other eye-witnesses to the accident. Other witnesses testified for the plaintiff as to the speed of the train, whose testimony as to the speed, ranged from twenty to thirty-five miles per hour.

On the part of the defendant, J. B. Campbell, defendant's engineer in charge of the train, testified that "just about the time I was passing over Lemon street I whistled for Maple avenue, and I noticed a delivery truck coming right in about one hundred feet advance of me come off Mungor street (also called Ledford street) parallel down the track, and as I got right opposite this Mungor street, semaphore located there I blew the whistle blew the road crossing whistle for Maple avenue; this man in the automobile truck driving right ahead of me, I think I was gaining little on him at that time, just as I got there I sounded the road crossing whistle again, thinking road be so close might get over to the track too far engine strike his truck; I never thought about the man driving down there and undertaking to cross, as I got closer to him, just as he come up to the crossing he kindy slacked the speed of his machine, I thought he was going to stop, the machine seemed to forge ahead again, and just the moment that machine forged ahead I grabbed the whistle I gave one long blast of the whistle, I was still blowing when the engine struck his machine. The engine struck his machine right directly in front of the back wheel, he was driving cater-corned across the

track, his machine headed a little east, diagonal across the track." The witness further testified that when deceased started to make the turn at Maple avenue crossing his train was forty feet from the crossing and running eighteen or twenty miles an hour.

Fred Kansteiner, a witness for the defendant, was an eye witness to the accident. He testified that he was walking west on Collier street, about three blocks east of Maple avenue, and saw the train come into view around the curve at Arch street; that he continued west on Collier and noticed an automobile come on to Collier street from Ledford street; that he noticed the train and automobile approaching and that it seemed to him they were about abreast; that when he reached Tenth street he turned his head to speak to a friend, and as he looked back he saw the air full of debris and what looked like a bundle of clothing coming down the track, which afterwards proved to be the deceased.

Witnesses estimated the speed of the truck at ten miles per hour. According to the testimony the truck, when driven at said speed could be stopped inside of two or three feet.

The ordinance of the City of Hannibal was introduced which provides that "no locomotive engine or train of cars shall run in this city at any place at a speed greater than six miles per hour."

The foregoing summary of the testimony fairly presents the case on the question of contributory negligence.

The running of the train in excess of the speed prescribed by the city ordinance amounted to negligence *per se* on the part of the defendant, but notwithstanding this violation of the ordinance the question whether the deceased was guilty of contributory negligence, precluding plaintiff's right to recover, still remains.

In the light of the uncontradicted facts in this case we cannot indulge in the presumption that the deceased, at the time of the accident, was in the exercise of ordinary care. The presumption only obtains in a case where there is an absence of evidence as to the fact of due care; this is not such a case.

It will be seen from the uncontradicted facts, as shown in this case, that the deceased, after he drove from Ledford street east on Collier street, could at any time have seen the train approach from the west on defendant's south track, a distance of over a thousand feet back, and running upon a straight and unobstructed track.

While driving east on Collier street to Maple avenue crossing, a distance of three hundred and fourteen feet, deceased was traveling parallel with and close to the track on which the train was running. All the evidence shows that had he taken the precaution to look towards the west, while yet in a place of safety, and before driving across the track, as it was his duty to do, he could have seen the oncoming train but a short distance from him. There was no obstruction whatever to the view westwardly from Maple avenue a distance of over thirteen hundred feet.

The uncontradicted evidence is that when the deceased reached the intersection of Maple avenue and Collier street he was then but a few feet from defendant's south track and the approaching train was then plainly visible and forty feet from the crossing; without stoppnig he turned and drove north across the track directly in front of the rapidly moving train and was killed.

The dictates of common prudence required the deceased, before driving the truck on the railroad crossing, to look and listen for the approach of a train. It is the settled law of this State that a person who goes upon a railroad crossing must exercise ordinary care for his own safety and act with ordinary prudence to ascertain whether a train is approaching to avoid injury and a failure to discharge this duty is negligence as a matter of law.

GANTT, J., in the case of Schmidt v. Railroad, 191 Mo. l. c. 222, states the law as follows:

"It is a settled law of this State that a person who goes upon a railroad track or proposes to cross it, must

use his eyes and ears to avoid injury. And while a neglect of the regulations in regard to the running of trains amounts to negligence in law on the part of the railway company, this does not absolve pedestrians and others who propose to cross the tracks from the exercise of ordinary care. Every intelligent person who has arrived at years of discretion, is presumed to know that it is dangerous to be upon a railroad track when trains are passing to and fro, and when crossing one, he is expected to be vigilant and watchful of the approach of the locomotive. The failure to exercise such vigilance is negligence *per se*. [Harlan v. Railroad, 64 Mo. 482]''

''The law that a traveler, before entering upon a railroad track, must observe some caution for his own safety, and that a failure to do so will be such negligence as will preclude a recovery in case of injury, is as well settled in this State as is the law that a railroad company is guilty of negligence in running a train without observing the reasonable precaution required by law or ordinance. The measure of precaution to be observed by a traveler depends often upon the circumstances and surroundings. The general rule is that in knowingly approaching the track of a railroad, he must use his sense of sight or hearing to ascertain if there be danger. If the view is so obstructed that he cannot see, he should carefully listen. The circumstances may not require that he both look and listen, but common prudence requires that he do either one or the other, and a failure to do so renders his act negligence in law. The rule of contributory negligence is not changed or abrogated by reason of a statute or ordinance imposing the duty on account of the violation of which the injury resulted. [Weller v. Railroad, 120 Mo. 653.] The statute does not absolve persons approaching a public railway crossing from exercising common prudence to avoid danger, nor shift the responsibility to another should injury ensue from the failure to exercise it. [Kenney v. Railroad, 105 Mo. 284]'' [See, also, Alexander v. St. Louis-San Francisco Ry. Co., 233 S. W. 48; Evans v. Illi-

nois Cent. R. Co., 233 S. W. 399; Morrow v. Hines, 233 S. W. 494; Laun v. Railroad, 216 Mo. 577, 116 S. W. 553; Farris v. Railroad, 167 Mo. App. 398, 151 S. W. 979; Hayden v. The M. K. & T. Ry. Co., 124 Mo. 571, 28 S. W. 74; Osborn v. Railroad, 179 Mo. App. 259, 166 S. W. 1118; Burge v. Railroad, 244 Mo. 94, 148 S. W. 925; Green v. Mo. Pac. Ry. Co., 192 Mo. 141, 90 S. W. 805; Stotler v. Railroad, 204 Mo. 639, 103 S. W. 1; Kelsay v. The Mo. Pac. Ry. Co., 129 Mo. l. c. 372, S. W. 339; Payne v. C. & A. R. R. Co., 136 Mo. 575, 38 S. W. 308; Reeves v. Railroad, 251 Mo. 176, 158 S. W. 2; Jackson v. Railroad, 171 Mo. App. 460, 156 S. W. 1005; Holland v. Railroad, 210 Mo. 350, 109 S. W. 19; Reno v. St. L. & Sub. Ry. Co., 180 Mo. 482, 79 S. W. 464.]

The negligence of the defendant's engineer in running the train at a rate of speed in excess of that prescribed by the city ordinance did not absolve the deceased from the duty of exercising ordinary prudence for his own safety before he undertook to cross the track. If the deceased had taken the precaution to look, and listen, before venturing upon the track, as it was his duty to do, he could have seen the train and stopped his truck until the train passed, and this accident would have been avoided. His own contributory negligence was the proximate cause of his death.

Respondent, however, contends "that the law presumes that when the deceased reached the line of intersection between Ledford and Collier streets, being then on the south line of Collier street, he at that point looked west for a train on defendant's track; that at and from that point he could have seen a train coming from the west a distance of only three hundred or three hundred and fifty feet; that not having seen the train at that point, the deceased had the right to rely on the presumption that any train, if one might be coming from the west at a distance where he could not see it, would not violate the speed ordinance; and under this situation the deceased had the right to assume, and doubtless did assume, that he could proceed in safety to the crossing and pass

over the same before any train could reach said crossing.''

There was no evidence that deceased looked at any point for the train. Nor can we presume that he looked at the point indicated by counsel, for the reason said point was far away from the danger zone.

But assuming that deceased looked at said point, his duty to look for the approaching train was not performed by looking only from a point on Ledford street, three hundred and thirty feet from the danger point, and at which point his view was somewhat obstructed. He did not have the right to put full reliance upon the obligation of the engineer to observe the speed ordinance, and himself fail to exercise ordinary care for his own safety. He could not close his eyes and ears and blindly venture across the track without looking, and then shift the consequence of his own neglect on the defendant. The deceased was not relieved of all duty to look and listen for the approach of the train because of the existence of the ordinance limiting the rate of speed of the train to six miles per hour.

It is clear from the testimony in this case that the deceased either did not look or if he looked he heeded not what he saw and carelessly attempted to beat the train across the track; in either event he was guilty of contributory negligence precluding his right to recover.

Our conclusion, therefore, is that the court should have sustained the demurrer, interposed by the defendant, to the evidence.

The commissioner recommends that the judgment of the  Hannibal Court of Common Pleas be reversed.


PER CURIAM:—The opinion of BRUERE, C., is adopted as the opinion of the court.

The judgment of the Hannibal Court of Common Pleas is accordingly reversed.

*Allen, P. J.,* and *Becker, J.,* concur. *Daues, J.,* not sitting.